IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS ROBLES, | : | CIVIL ACTION NO. **1:CV-10-2663** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| J.J. CASEY, et al., | : | |
| | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

### I. Background.

On December 9, 2010, Plaintiff, Carlos Robles, an inmate at the State Correctional Institution at Dallas, Dallas, Pennsylvania ("SCI-Dallas"), filed, *pro se*, the instant civil rights action, pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff filed his action in the Luzerne County Court of Common Pleas. Plaintiff also filed a motion for leave to proceed *in forma pauperis*. On December 29, 2010, counsel for Defendants filed a Notice of Removal pursuant to 28 U.S.C. §1441(a) and removed this case to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). Defendants attached a copy of Plaintiff's Complaint and *in forma pauperis* motion to their Notice. (Doc. 1-1).

Plaintiff's Complaint consists of eight typed pages. In his Complaint, Plaintiff names the following Defendants: Kitchen Steward J. J. Casey; Kitchen Manager Gary Davis; Assistant Kitchen Manager Kevin Jones; Superintendent Jerome Walsh; Grievance Coordinator Robin Lucas; Safety Officer Erik Sowga; Grievance Coordinator Robin Lucas; Department of Corrections Chief Grievance Coordinator Dorina Varner. (Doc. 1-1, pp. 3-4).

On January 5, 2011, Counsel for the PA Department of Corrections filed, on behalf of Defendants, a premature Motion to Dismiss Plaintiff 's Complaint (Doc. 4) and support brief (Doc. 5) prior to the mandatory screening of Plaintiff 's Complaint under the PLRA. We will recommend that Defendants' Motion to Dismiss be dismissed as premature. [1]

Plaintiff avers that on July 25, 2010, while assigned to work in the kitchen area at SCI-Dallas, he was directed by Defendant Casey to clean the kitchen with a bucket filled with chemicals. Plaintiff avers that he was not advised that the bucket contained hazardous chemicals which required him to wear safety apparel and equipment. Plaintiff alleges that while he was cleaning, "the chemical splashed into [his] eyes causing severe burning to his eye." (Id., p. 5).

Plaintiff avers that he was immediately sent to the prison infirmary and that it was determined he had to go to the Wilkes-Barre General Hospital emergency room for treatment due to the severity of his eye injury. Plaintiff alleges that he was treated at the hospital. Plaintiff avers that while he was waiting to be seen by an eye specialist, the prison medical staff told the correctional officers who took Plaintiff to the hospital to bring him back to the prison since they would have the prison eye specialist examine him. (Id., pp. 5-6). Plaintiff alleges that on the day he was scheduled to be examined by the prison eye specialist, the prison was locked down and he never received his exam.

Plaintiff states that while he was waiting for another eye exam to be scheduled, he was taken

---

[1]This same counsel has also filed a premature Motion to Dismiss prior to the mandatory screening of Plaintiff's Complaint under the PLRA and prior to proper service in another one of the undersigned cases. See Groff v. Lawler, Civil No. 10-2340, M.D. Pa. Counsel for Corrections Defendants is hereby directed to refrain from filing any further premature motions prior to the mandatory screening of Plaintiff's Complaints in our cases.

to an outside facility for cataract surgery. Plaintiff states that his cataract surgery was scheduled before his eye injury and that the eye surgeon was not advised he recently suffered from a chemical burn to his eye. Plaintiff also states that he was not allowed to be examined by the outside eye surgeon before his surgery. (*Id.*, p. 6). Following his surgery, Plaintiff alleges that he lost vision in his eye in which he suffered the severe chemical burn. (*Id.*).

Plaintiff states that he filed a grievance regarding his eye burning incident complaining that prison staff failed to give him protective gear and training before he was given chemicals to clean. Plaintiff avers that Defendant Lucas assigned Defendant Sowga to conduct an investigation regarding his grievance even though Lucas knew Sowga was the staff member who failed to train inmates in the kitchen area on how to use chemicals for cleaning. (*Id.*, p. 7). Plaintiff alleges that Lucas assigned Sowga "to specifically cover up for the negligence to staff to do their jobs and train inmates or even give them protective gear ... ." (*Id.*).

Plaintiff avers that after he filed his grievance, Sowga, under direction of Lucas, told the prison kitchen staff to circulate forms to the inmates working in the kitchen verifying that the inmates received safety training even though they did not receive training. (*Id.*). Plaintiff avers that he was threatened and ordered to sign the form and that he did but dated it after his eye injury.

Plaintiff alleges that Defendant Lucas responded to his grievance on August 1, 2010, based on Sowga's investigation, and that she denied it stating that he was trained in the proper handling of chemicals. Plaintiff avers that Lucas falsified documents to cover up the fact that he was not trained. (*Id.*, p. 8).

Plaintiff avers that he filed an appeal of his grievance of August 25, 2010, and that on August

3

31, 2010, Defendant Walsh denied his appeal quoting the response to his initial grievance filed by Defendants Lucas and Sowga. Plaintiff avers that Defendant Walsh failed to independently investigate the claims in his grievance. (Id.).

Plaintiff states that he then appealed his grievance to the DOC Grievance Coordinator and that on October 21, 2010, Defendant Varner issued a response stating that while she did not find in the record that Plaintiff received safety training and protective gear, he should have known where it was and asked for safety gear. (Id., pp. 8-9). Thus, Plaintiff indicates that he completed the DOC grievance process.[2]

Plaintiff concludes by averring that each Defendant was negligent and or reckless, and deliberately indifferent to his safety in violation of his constitutional rights. Plaintiff also claims that "he is not being granted equal protection as a Hispanic American with limited language capacity where other facilities insure that proper training is given in both English and Spanish to ensure that they are able to fulfill their assigned job roles safely." (Id., pp. 9-10). Plaintiff further claims that "the failure of the Defendants to provide any training to [him] resulted in his physical injury and loss of vision which is now permanent and acting as a life altering handicap to his person." (Id., p. 10).

Additionally, Plaintiff claims that the overpopulation at SCI-Dallas resulted in living

---

[2]It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. Id. at 230. In Porter v. Nussle, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The Porter Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. However, Defendants have the burden to plead exhaustion as an affirmative defense. See Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

conditions that are cruel and unusual and, he claims that there are unsanitary and unsafe conditions in the kitchen area where he was assigned to work. (*Id.*).

Plaintiff does not state any allegations as against Defendant Davis, kitchen manager, and Defendant Jones, assistant kitchen manager.

As relief, Plaintiff requests more than $250,000 damages for pain and suffering as well as compensatory damages and nominal damages and injunctive relief. (*Id.*, pp. 10-11). Plaintiff does not state if he sues Defendants in their individual and/or official capacities.[3]

We now screen Plaintiff's pleading as we are obliged to do under the PLRA.

## II. PLRA.

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 1-1, pp. 12-16). The Prison Litigation Reform Act of 1995,[4] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma*

---

[3]Plaintiff cannot seek compensatory damages from each named Defendant in both their individual and official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

Thus, insofar as Plaintiff has sued all of the state actor Defendants in both their individual and official capacities and he seeks monetary damages from them, he can only seek monetary damages from these Defendants in their individual capacities. Therefore, Plaintiff's claims for monetary damages against Defendants in their official capacities should be dismissed.

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

*pauperis* pursuant to 28 U.S.C. § 1915.[5] Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

## III. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[6] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a

---

[5]The Plaintiff filed an application to proceed *in forma pauperis* with the State Court and an authorization to have funds deducted from his prison accounts. (Doc. 1-1, pp. 12-15).

[6]Plaintiff alleges in his pleading that the individual Defendants are employees of the PA DOC. (Doc. 1-1). This is sufficient to show that Defendants are state agents.

state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing *Rode, supra*.

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

## IV. Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937

7

(2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## V. Discussion.

As stated, Plaintiff has named SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner as Defendants in this case. Plaintiff avers that these four Defendants improperly investigated and responded to his grievance about his injury to his eye allegedly caused when the chemicals he was cleaning the prison kitchen

8

with got into his eye. Plaintiff alleges his eye injury was due to the failure of prison staff to train him and provide him with protective gear.

Based on Plaintiff's allegations, we find that Plaintiff has only named SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner as Defendants due to their respective responses to his grievance and his appeal of his grievance. As stated, Plaintiff's allegations do not indicate that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner had any personal involvement with the decision to direct Plaintiff to clean the kitchen area on July 25, 2010, with chemicals without training him and without giving him protective gear. Plaintiff does not allege that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner were deliberately indifferent to his safety regarding his assignment to clean the kitchen with chemicals. These Defendants are not alleged to have been involved in the decision to have Plaintiff clean the kitchen with chemicals without proper training and proper gear.

Further, Plaintiff does not allege that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner failed to give him proper medical care for his eye injury. In fact, Plaintiff does not allege that any named Defendant failed to give him proper medical care for his eye injury.

We do not find that Plaintiff has sufficiently stated any Defendants personal involvement with respect to a claim that he was denied proper medical care for his eye injury.

In *Williams v. Klem*, 2008 WL 4453100, *7, the Court stated:

9

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235-36 (3d Cir.2004); *Natale v. Camden Cty. Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1979). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347. "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' " *Young v. Kazmerski,* 266 Fed. Appx. 191, 193 (3d Cir.2008) (quoting *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347).

Thus, we will recommend that, insofar as Plaintiff is deemed as raising an Eighth Amendment denial of proper medical care claim with respect to his July 25, 2010 eye injury, this claim be dismissed as against all Defendants.

Additionally, simply because Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner denied Plaintiff's grievance and his appeals is not sufficient to name these prison staff members and this DOC official as Defendants in this civil rights action. The law is well-settled that inmates do not have a constitutional right to a grievance process, and that naming the supervisory Defendants based only on their responses to an inmate's grievance and appeals will subject these Defendants to dismissal. *Bartelli v. Jones,* 231 Fed. Appx. 129, 132 (3d Cir. 2007)("a state grievance procedure

does not confer any substantive constitutional right upon prison inmates.")(citation omitted);

*O'Connell v. Sobina*, 2008 WL 144199, * 17 (W. D. Pa.); *Jones v. North Carolina Prisoners's Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977). This Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the DOC does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005)(Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra.; See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.)(claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures." (citations omitted)).

Moreover, as mentioned, Plaintiff does not state any personal involvement of Defendant Davis, kitchen manager, and Defendant Jones, assistant kitchen manager, with respect to the alleged violations of his constitutional rights.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims.
> *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868

(2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* ) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.,* 2010 WL 5071779, * 5 (3d cir. 12-14-10).

In his Complaint, Plaintiff is clearly attempting to assert his claims against Defendants Davis and Jones based only on *respondeat superior*. Further, Defendants Davis and Jones are not sufficiently stated to have been personally involved with any cognizable violation of Plaintiff's constitutional rights. Nor are Defendants Davis and Jones alleged to have directed any SCI-Dallas staff to violate his rights. *Id.*

The Supreme Court in *Iqbal* repeated the personal involvement necessary in a §1983 action.

In *Innis v. Wilson,* 2009 WL 1608502, *2 (3d Cir. 2009), the Court, citing *Iqbal,* stated:

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

"Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have

personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

*See also Saltzman v. Independence Blue Cross,* 2009 WL 1606887, *4 (E.D. Pa.).

Thus, we will recommend that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner be dismissed, and that Defendants Davis and Jones be dismissed. *See Sims v. Piazza,* 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the assumption of truth.")(citation omitted); *Brickell v. Clinton County Prison Bd.,* 658 F. Supp. 2d 621, 625-626 (M.D. Pa. 2009).

The remaining Defendant is Casey, the kitchen supervisor who allegedly directed Plaintiff to clean the kitchen area with hazardous chemicals without giving him proper training and protective gear. Plaintiff alleges that Defendant Casey was deliberately indifferent to his safety in violation of the Eighth Amendment.

We find the instant case similar to the *Brickell* case. In *Brickell,* the Plaintiff inmate claimed that she was severely burned when she was working in the kitchen at the Clinton County Prison and assigned to move a container of hot grease from the stove to warmers and the grease spilled on her. In *Brickell,* the Court found that its Plaintiff was attempting to hold Defendants liable under §1983 based on the state-created danger theory. As in *Brickell,* we find that Plaintiff Robles is also attempting to hold Defendant Casey labile under §1983 based on the state-created danger theory.

In *Brickell,* the Court stated:

> To make out a state-created danger claim under § 1983, Brickell must meet a four-part test. *Bright v. Westmoreland County,* 443 F.3d 276, 281 (3d Cir.2006). First, " 'the harm ultimately caused [must have been]

foreseeable and fairly direct.' " *Id.* (quoting *Kneipp v. Tedder,* 95 F.3d 1199, 1208 (3d Cir.1996)). Second, there must have been "a state actor [who] acted with a degree of culpability that shocks the conscience." *Id.* (citing *Schieber v. City of Philadelphia,* 320 F.3d 409, 416 (2003)). Third, there must have been a relationship between the plaintiff and the state such that "'the plaintiff was a foreseeable victim of the defendant's acts' " or that she was a " 'member of a discrete class of persons subjected to the potential harm brought about by the states' actions.' " *Id.* (quoting *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906, 913 (3d Cir.1997)). Last, a state actor must have "affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Id.* (citing *Rivas v. City of Passaic,* 365 F.3d 181, 195 (3d Cir.2004)).

658 F. Supp. 2d at 628.

We will recommend that Plaintiff's above detailed Eighth Amendment claim based on state-created danger be allowed to proceed only as against Defendant Casey. We find that Plaintiff's allegations of liability under the Eighth Amendment as against Defendant Casey sufficiently state, for present screening purposes, a cognizable constitutional claim for deliberate indifference to his safety. Plaintiff alleges that the danger of his use of chemicals created by Defendant Casey was an unjustified increase in the risk he would be injured while cleaning the kitchen at SCI-Dallas under the circumstances in which Casey failed to train him on the use of chemicals and Casey failed to give him protective gear. Based on the above stated allegations in Plaintiff's pleading, Defendant Casey is sufficiently stated to have been personally involved with Plaintiff's Eighth Amendment claim. *See Innis v. Wilson,* 2009 WL 1608502, *2.[7]

---

[7]To the extent Plaintiff claims that Defendants acted negligently and recklessly (Doc. 1-1, p. 9), we note that in *Brickell,* the Court quoted *Daniels v. Williams,* 474 U.S. 327, 328 (1986), and stated, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." 658 F. Supp. 2d at 629. Thus, if the Court finds that the alleged conduct of Defendant Casey was merely negligent in failing to

Additionally, we do not find that Plaintiff has stated an Eighth Amendment conditions of confinement claim against any Defendant regarding the alleged overcrowding at SCI-Dallas and the alleged unsanitary and unsafe work area conditions in the kitchen at SCI-Dallas. (Doc. 1-1, p. 10).

In *Williams v. Klem*, 2008 WL 4453100, *6-*7, the Court stated:

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). To establish an Eighth Amendment claim, Williams must show that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834. In reviewing this type of claim, the courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in *Wilson v. Seiter*, 501 U.S. 294, 304-05, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991):

Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id.* at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. *See Farmer*, 511 U.S. at 837.

Plaintiff's stated allegations regarding his Eighth Amendment conditions of confinement claim

---

train Plaintiff in the use of chemicals to clean and in failing to give Plaintiff protective gear and, that Casey's alleged conduct was not shocking to the conscience, then it may decide to dismiss Casey based on *Brickell*.

clearly fail to state that the over crowding and unsanitary conditions in the kitchen posed a substantial risk of serious harm to his health or safety. Nor does Plaintiff state the personal involvement of any Defendant with respect to the over crowding at the prison and the conditions in the kitchen. Thus, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed as against all Defendants.

Finally, we do not find that Plaintiff has stated a cognizable Fourteenth Amendment equal protection claim. (Doc. 1-1, pp. 9-10). As stated, Plaintiff claims that "he is not being granted equal protection as a Hispanic American with limited language capacity where other facilities insure that proper training is given in both English and Spanish to ensure that they are able to fulfill their assigned job roles safely." (Id., pp. 9-10).

In *Tapp v. Proto*, 2010 WL 1946919, *20 (E.D. Pa.), the Court stated:

> All citizens, whether prisoner or pretrial detainee, are protected from invidious discrimination on the basis of race by the Equal Protection Clause of the Fourteenth Amendment. *See McDonnell,* 418 U.S. at 556. To state an equal protection claim, a plaintiff must show that the defendants' actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose. *Village of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith,* 100 F.3d 644, 648 (8th Cir. 1996).

The elements of a § 1983 equal protection claim require Plaintiff to state Defendants intended to discriminate against him, and later to prove this by either direct or circumstantial

evidence. *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a §

1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976).

*See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a

§ 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

    The Equal Protection Clause does not require that all persons be treated alike, but instead,

a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or

involved a fundamental interest or individual discrimination. *Tigner v. Texas*, 310 U.S. 141, 147

(1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984). It is

well-settled that a litigant, in order to establish a viable equal protection claim, must show an

intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v.

Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v.

Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state

of mind" requirement applies equally to claims involving (1) discrimination on the basis of race,

religion, gender, alienage or national origin, (2) the violation of fundamental rights, and

(3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie*, 933 F. Supp.

1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp.

242, 245 (M.D. Pa.), *aff'd*. 972 F.2d 1330 (3d Cir. 1992).

    Plaintiff has alleged facts from which it can be concluded that he is a member of a protected

class, *i.e.* his race. However, Plaintiff has not alleged that any named Defendant engaged in

intentional or purposeful discrimination. Plaintiff does not allege that he was treated differently by

Defendants than similarly situated persons on the basis of his race. In short, Plaintiff does not allege

that others similarly situated, but who were not within the protected class, were given training on how to clean with chemicals and were given protective gear. In fact, Plaintiff states that no inmates working in the kitchen were give training on how to clean with chemicals. As discussed, Plaintiff does not claim that Defendants failed to train him and failed to give him protective gear because of his race, and he does not state that he was similarly situated to others who were not in the protected class and who were given training and protective gear. Thus, there is no cognizable equal protection claim stated by Plaintiff. *See Mendoza v. Meisel*, 270 Fed.Appx. 105, 107-08 (3d Cir. 2008)(the Court stated that Plaintiff must allege "that he was treated differently from other people who are similarly situated, which is necessary to state an equal protection claim.")(citation omitted).

Therefore, we shall recommend that Plaintiff's Fourteenth Amendment equal protection claim be dismissed as against all Defendants.

## VI. Recommendation.

Based on the above, it is respectfully recommended that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner be dismissed, and it is recommended that Defendants Davis and Jones be dismissed. It is also recommended that Plaintiff's claims for monetary damages against all Defendants in their official capacities be dismissed. Additionally, it is recommend that insofar as Plaintiff is deemed as raising an Eighth Amendment denial of proper medical care claim with respect to his July 25, 2010 eye injury that this claim be dismissed as against all Defendants. It is also recommended that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed as against all Defendants.

Further, it is recommended that Plaintiff's Fourteenth Amendment equal protection claim be dismissed as against all Defendants.

It is recommended that Plaintiff's Eighth Amendment state-created danger claim be allowed to proceed only as against Defendant Casey.

Additionally, it is recommend that Defendants' Motion to Dismiss (Doc. 4) be dismissed as premature.

Finally, it is recommended that this case be recommitted to the undersigned for further proceedings, including directing service of his Plaintiff's Complaint on remaining Defendant Casey.

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: January 7, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS ROBLES, | : | CIVIL ACTION NO. **1:CV-10-2663** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| J.J. CASEY, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated January 7th, 2011.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 7, 2011**