IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS ROBLES, | : | CIVIL ACTION NO. **1:CV-10-2663** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| J.J. CASEY, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

On December 9, 2010, Plaintiff, Carlos Robles, an inmate at the State Correctional Institution at Dallas, Dallas, Pennsylvania ("SCI-Dallas"), filed, *pro se*, the instant civil rights action, pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff filed his action in the Luzerne County Court of Common Pleas. Plaintiff also filed a motion for leave to proceed *in forma pauperis*. On December 29, 2010, counsel for Defendants filed a Notice of Removal pursuant to 28 U.S.C. §1441(a) and removed this case to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). Defendants attached a copy of Plaintiff's Complaint and his *in forma pauperis* motion to their Notice. (Doc. 1-1).

Plaintiff's original Complaint consisted of eight typed pages. In his original Complaint, Plaintiff named the following Defendants: Kitchen Steward J. J. Casey; Kitchen Manager Gary Davis; Assistant Kitchen Manager Kevin Jones; Superintendent Jerome Walsh; Grievance Coordinator Robin Lucas; Safety Officer Erik Sowga; Grievance Coordinator Robin Lucas; Department of Corrections Chief Grievance Coordinator Dorina Varner. (Doc. 1-1, pp. 3-4).

Plaintiff averred that on July 25, 2010, while assigned to work in the kitchen area at SCI-

Dallas, he was directed by Defendant Casey to clean the kitchen with a bucket filled with chemicals. Plaintiff averred that he was not advised that the bucket contained hazardous chemicals which required him to wear safety apparel and equipment. Plaintiff alleged that while he was cleaning, "the chemical splashed into [his] eyes causing severe burning to his eye." (*Id.*, p. 5).

Plaintiff claimed that each Defendant was negligent and or reckless, and deliberately indifferent to his safety in violation of his constitutional rights. Plaintiff also claimed that "he is not being granted equal protection as a Hispanic American with limited language capacity where other facilities insure that proper training is given in both English and Spanish to ensure that they are able to fulfill their assigned job roles safely." (*Id.*, pp. 9-10). Plaintiff further claimed that "the failure of the Defendants to provide any training to [him] resulted in his physical injury and loss of vision which is now permanent and acting as a life altering handicap to his person." (*Id.*, p. 10).

Additionally, Plaintiff claimed that the overpopulation at SCI-Dallas resulted in living conditions that are cruel and unusual. Also, Plaintiff claimed that there were unsanitary and unsafe conditions in the kitchen area where he was assigned to work. (*Id.*).

On January 7, 2011, we screened Plaintiff's original Complaint as required under the PLRA, 28 U.S.C. §1915(e), and issued a Report and Recommendation. (Doc. 6). We recommended that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner be dismissed, and that Defendants Davis and Jones be dismissed. We also recommended that Plaintiff's claims for monetary damages against all Defendants in their official capacities be dismissed. Additionally, we recommended that insofar as Plaintiff was deemed as raising an Eighth Amendment denial of proper medical care claim with

respect to his July 25, 2010 eye injury that this claim be dismissed as against all Defendants. Further, we recommended that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed as against all Defendants.

Additionally, we recommended that Plaintiff's Fourteenth Amendment equal protection claim be dismissed as against all Defendants. We also recommended that Plaintiff's Eighth Amendment state-created danger claim be allowed to proceed only as against Defendant Casey.

Finally, we recommended that this case be recommitted to the undersigned for further proceedings, including directing service of his Plaintiff's Complaint on remaining Defendant Casey.

On February 3, 2011, the Court issued a Memorandum and Order, and directed as follows:

> 1. Any claims for monetary damages against all named Defendants in their official capacitates are **DISMISSED WITH PREJUDICE;**
> 2. Plaintiff's Fourteenth Amendment Equal Protection claims against all named Defendants are **DISMISSED WITH PREJUDICE;**
> 3. Any Eighth Amendment denial of proper medical care claims against all named Defendants are **DISMISSED WITHOUT PREJUDICE;**
> 4. Plaintiff's Eighth Amendment conditions of confinement claims are against all named Defendants are **DISMISSED WITHOUT PREJUDICE;**
> 5. All claims against Defendants Davis, Jones, Lucas, Sowga, Walsh, and Varner are **DISMISSED WITHOUT PREJUDICE;**
> 6. Plaintiff's Eighth Amendment state-created danger claim **SHALL BE** permitted to proceed against Defendant Casey;
> 7. Plaintiff **SHALL BE** given leave to file an amended complaint within ten days of the date of this order;
> 8. Because Plaintiff has been granted leave to file an amended complaint, Defendants' motion to dismiss (Doc. No. 4) is **DENIED** as moot. Defendants may renew the motion to dismiss if Plaintiff fails to file an amended complaint or if the amended complaint fails to state a claim.
> 9. Plaintiff's motion for extension of time to respond to Defendants' motion to dismiss (Doc. No. 8) is **DENIED** as moot.
> 10. The above captioned action **SHALL BE** referred to Magistrate Judge Blewitt for pre-trial management.

(Doc. 10, pp. 7-8).

3

On March 16, 2011, Plaintiff filed his Amended Complaint.  (Doc. 15).  We found that Plaintiff's Amended Complaint was not a proper pleading under   Fed.R.Civ.P. 8(a) and 10 and, we  directed Plaintiff to file a Second Amended Complaint.  It was not clear who Plaintiff named as Defendants in his Amended Complaint and it was not clear as to the alleged unconstitutional conduct of each one of these Defendants.  Further, Plaintiff added two new Defendants, RNS Leskowsky and Dr. Bohinski, in his Amended Complaint.  Also, Plaintiff did not include a separate request for relief in his Amended Complaint.   Plaintiff also included several pages of argument in his Amended Complaint which were not appropriate in a pleading.

Thus, on March 18, 2011, we issued an Order and directed as follows:

1.   Plaintiff shall file his Second Amended Complaint within **fifteen (15) days** of the date of this Order.
2.  Plaintiff's Second Amended Complaint shall properly allege a claim under 42 U.S.C. §1983 against a proper Defendant as specified in the foregoing Order.
3.  Plaintiff's Second Amended Complaint shall be filed to the same docket number as the instant action and shall be entitled "Second Amended Complaint".
4.  Plaintiff's Second Amended Complaint shall be complete in all respects.  It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed.  Plaintiff's Second Amended Complaint shall also be "simple, concise, and direct", as required by the Rules of Civil Procedure, and it should not contain argument.  Fed.R.Civ.P. 8(e)(1).
5.  Failure of Plaintiff to timely file his Second Amended Complaint will result in a recommendation that this action be dismissed.

(Doc. 16).

On March 29, 2011, Plaintiff filed his Second Amended Complaint consisting of twenty-three pages.  (Doc. 17).  We now screen Plaintiff's Second Amended Complaint as we are

obliged to do under the PLRA.[1]

## II.  PLRA.

As stated, the Plaintiff filed an application to proceed *in forma pauperis* pursuant to

28 U.S.C. § 1915.  (Doc. 1-1, pp. 12-16).  The Prison Litigation Reform Act of 1995,[2] (the "PLRA"),

obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma*

*pauperis* pursuant to 28 U.S.C. § 1915.[3]  Specifically, Section 1915(e)(2), which was created by

§ 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

## III.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

---

[1]On April 13, 2011, we denied without prejudice Defendants' Motion for Extension of Time to respond to Plaintiff's Second Amended Complaint since the Court had not yet screened Plaintiff's latest pleading as required.  (Docs. 18 and 19).

[2]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[3]The Plaintiff filed an application to proceed *in forma pauperis* with the State Court and an authorization to have funds deducted from his prison accounts. (Doc. 1-1, pp. 12-15).

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[4]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a

---

[4]Plaintiff alleges in his second amended pleading that the individual Defendants are employees of the PA DOC. (Doc. 17, pp. 1-3).  This is sufficient to show that Defendants are state agents.

viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing *Rode, supra.*

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

## IV.  Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal*, 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny]*, 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* *Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## V. Allegations of Second Amended Complaint (Doc. 17).

Plaintiff names the following Defendants in his Second Amended Complaint:

Kitchen Steward J. J. Casey; Kitchen Manager Gary Davis; Assistant Kitchen Manager Kevin Jones; Superintendent Jerome Walsh; Grievance Coordinator Robin Lucas; Safety Officer Erik Sowga; Grievance Coordinator Robin Lucas; Department of Corrections ("DOC") Chief Grievance Coordinator Dorina Varner; Thomas Leskowski, RNS; And Dr. Bohinski.  (Doc. 17, pp. 1-2).

Plaintiff alleges that he reported to the medical department at SCI-Dallas on several occasions for loss of sight "due to what he believed to be Glaucoma."  (*Id.,* p. 14, ¶ 63).  Plaintiff then alleges as follows with respect to Defendant Dr. Bohinski[5]:

> He [Plaintiff] was seen by defendant Bohinski and diagnosed with said disease and was summarily told that they would not pay for the removal of the blockage until it completely covered his eye as they didn't have the money to pay for something that was no life threatening such as glaucoma.
> The Plaintiff informed the defendant that he worked in the kitchen and had loss of depth perception and equilibrium which concerned him since it was unsafe in the kitchen.
> The defendant explained that he saw no reason why he couldn't work and would clear him regardless of his concerns.

(*Id.,* ¶'s 64-67).

Plaintiff also avers that during his work assignment in the kitchen at SCI-Dallas, he observed on numerous occasions that the kitchen staff Defendants saw inmates working with hazardous

---

[5]Dr. Bohinski was not named as a Defendant in Plaintiff's original Complaint.

8

chemical without safety equipment or training.  Plaintiff avers that when he was working as a cook, he was directed on numerous occasions by kitchen staff Defendants to prepare rotten food, infested with bugs, and to serve it on filthy and unsensitized trays with unsensitized silverware.  Plaintiff further avers that he spoke to Defendant Superintendent Jerome Walsh about the horrible food and Walsh told him he did not care.  Plaintiff also alleges that he saw Walsh observe inmates as they worked without safety gear in violation of DOC policy.  (*Id*., pp. 14-15).  Additionally, Plaintiff avers that he saw all Defendants except for Defendant Varner observe inmates as they worked without safety equipment and as they used hazardous materials.  Plaintiff alleges that Defendants never directed inmates to wear safety gear or question the safety hazardous despite violations of DOC policy.  (*Id*. p. 15).

Plaintiff avers that on July 25, 2010, while assigned to work in the kitchen area at SCI-Dallas, he was directed by Defendant Casey to take hazardous chemicals and clean the grease in the kitchen.  (*Id*.).  Plaintiff alleges that he obeyed the order and that while he was cleaning, "the chemical he was issued get (sic) into his eye." (*Id*., p. 16).  Plaintiff alleges that the "burning injury to his eyes [was the] result of lack of the issuance of safety equipment." (*Id*., p. 16, ¶ 81).

Plaintiff avers that he was immediately sent to the prison infirmary and that it was determined he had to go to the Wilkes-Barre General Hospital emergency room for treatment. Plaintiff alleges that while he was waiting to be examined at the hospital by an eye specialist, Defendant Dr. Bohinski and Defendant Leskowski told the correctional officers who took Plaintiff to the hospital to bring him back to the prison since they would have the prison contracted eye specialist examine him at a later date.  (*Id*., p. 16).

Plaintiff avers that he suffered an inordinate delay in medical treatment for his eye which contributed to the loss of sight from which he now suffers.

Plaintiff also avers that prior to his eye injury, Defendant Dr. Bohinski delayed the treatment for his severe cataracts in his eye since it was not a life threatening condition.  (*Id.*,p. 16, ¶ 81). Plaintiff states that was still required to work despite his cataracts and lack of depth perception and vision, and that Dr. Bohinski ignored his concerns.

Plaintiff states that he filed a grievance regarding his eye burning incident complaining that prison staff failed to give him protective gear and training before he was given chemicals with which to clean.   Plaintiff avers that Defendant Lucas, who was in charge of addressing to inmate grievances, assigned Defendant Sowga to conduct an investigation and file a response to Plaintiff's grievance.   Plaintiff then avers that:

> Defendant Sowga contacted Defendant Davis and informed him that a complaint had been lodged and that he should have inmates falsify documents claiming that they had received safety training that had never been given.
> Defendant Davis began ordering inmates to falsify safety training documents.
> Defendant Sowga then responded to the plaintiff's complaint falsifying facts on a government document alleging that the plaintiff "had" in fact been given training that he was well aware he had not received.
> Defendant Lucas, who was well aware that the plaintiff's was being subject to hazardous conditions complained of long before his injury then submitted a falsified document in complicity with defendant Sowga stating that the plaintiff had received safety training she was well aware he had not received prior to his injury.

(*Id.*, p. 17, ¶'s 86-89).

Plaintiff alleges that Defendants Lucas and Sowga denied his grievance on August 1, 2010.

(*Id.*, p. 18).

10

Plaintiff avers that he filed an appeal of his grievance on August 25, 2010 to Defendant Walsh, and that on August 31, 2010, Defendant Walsh denied his appeal.  Plaintiff avers that Defendant Walsh had made numerous tours of the kitchen and watched inmates work without safety gear.  (*Id.*).

Plaintiff states that he then finally appealed his grievance to the DOC Chief Grievance Coordinator Defendant Varner and that on October 21, 2010, Defendant Varner ignored his safety complaints and without further investigation, she denied his appeal. (*Id.*, p. 18).  Thus, Plaintiff again indicates that he completed the DOC grievance process.[6]

Plaintiff indicates that he is raising Eighth Amendment conditions of confinement claims regarding the overcrowding at the prison, insufficient housing space and lighting in the cells, broken heat, disease outbreaks, inmates having no hot water for days, inability to flush toilets for days, and no showers for inmates for days.  (*Id.*, p. 19).

Plaintiff also alleges that he is raising Eighth Amendment conditions of confinement claims regarding the substandard food, the serving of food by inmates who have diseases without gloves, the lack of safety training and equipment, the lack of emergency exits, and insect infestation.  (*Id.*).

---

[6]It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Id.* at 230.  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*   However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Plaintiff also avers that the cells have poor ventilation, that there is overcrowding in the exercise yard, that there is lack of medical training, and that medical staff are incompetent.  (*Id.*, p. 20).

Plaintiff claims that psychiatric inmates and RHU inmates are not treated properly.  Plaintiff does not state that he was either a psychiatric inmate or an RHU inmate. (*Id.*).[7]

In his second amended pleading, Plaintiff specifically states allegations as against Defendant Davis, kitchen manager, and Defendant Jones, assistant kitchen manager.  (Doc. 17, pp. 4-6). Plaintiff avers that these two Defendants knew of the failure of staff to properly train inmates in safety precautions when using chemical and allowed staff's failure to give inmates safety equipment. Plaintiff also avers that these Defendants were involved in the falsification of documents after he was injured when they ordered staff to make inmates sign false documents reflecting that they received safety training.  Plaintiff further alleges that these two Defendants knew of the hazardous as well as unsanitary working conditions in the kitchen and knew of the substandard food being served.  Plaintiff additionally avers that these two Defendants knew of the overcrowding in the kitchen and of the lack of exits.

As relief, Plaintiff requests $250,000 damages for pain and suffering for loss of sight as well as compensatory damages and $250,000 punitive damages.  Plaintiff also requests injunctive relief. (*Id.*, pp. 22-23).  Plaintiff again does not state if he sues Defendants in their individual and/or

---

[7]Plaintiff did not seek to file this case as a class action, and he has no standing to assert any claims on behalf of other inmates.  *See Prison Soc. v. Cortes*, 2009 WL 1653543, * 4 (M.D. Pa.) ("the Plaintiff generally must assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties.") (citation omitted).

official capacities.[8]

## VI. Discussion.

In his Second Amended Complaint, Plaintiff has again named SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga,   Superintendent Walsh and DOC Chief Grievance Coordinator Varner as Defendants in this case.  Plaintiff again avers that these four Defendants improperly investigated and responded to his grievance and appeals  about his injury to his eye allegedly caused when the chemicals which he used to clean the prison kitchen got into his eye. Plaintiff alleges his eye injury was due to the failure of prison staff to train him and provide him with protective gear.

Based on Plaintiff's allegations in his Second Amended Complaint, we again find that Plaintiff has only named SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner as Defendants due to their respective responses to his grievance and his appeals of his grievance.  As stated, Plaintiff's allegations do not indicate that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner had any personal

---

[8]As we previously noted, Plaintiff cannot seek compensatory damages from each named Defendant in both their individual and official capacities.  To the extent that Plaintiff seeks monetary damages from Defendants, he can only sue the state actor Defendants in their individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

Thus, insofar as Plaintiff has sued all of the state actor Defendants in both their individual and official capacities and he seeks monetary damages from them, he can only seek monetary damages from these Defendants in their individual capacities.  Therefore, Plaintiff's claims for monetary damages against Defendants in their official capacities should be dismissed.

involvement with the decision to direct Plaintiff to clean the kitchen area on July 25, 2010, with

chemicals without training him and without giving him protective gear.  Plaintiff does not allege that

Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh

and DOC Chief Grievance Coordinator Varner were deliberately indifferent to his safety regarding

his assignment to clean the kitchen with chemicals.  These Defendants are not alleged to have been

involved in the decision to have Plaintiff clean the kitchen with chemicals without proper training

and proper gear.

We again find that Plaintiff's allegations as to Defendants SCI-Dallas Grievance Coordinator

Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner,

*i.e.* that they denied Plaintiff's grievance and his appeals, are not sufficient to name these prison

staff members and this DOC official as Defendants in this civil rights action.  The law is well-settled

that inmates do not have a constitutional right to a grievance process, and that naming the

supervisory Defendants based only on their responses to an inmate's grievance and appeals will

subject these Defendants to dismissal.  *Bartelli v. Jones*, 231 Fed. Appx. 129, 132 (3d Cir. 2007)("a

state grievance procedure does not confer any substantive constitutional right upon prison

inmates.")(citation omitted); *O'Connell v. Sobina*, 2008 WL 144199, * 17 (W. D. Pa.); *Jones v.

North Carolina Prisoners's Labor Union, Inc.,* 433 U.S. 119, 137-38 (1977).  This Court has also

recognized that grievance procedures are not constitutionally mandated.  *See Chimenti v. Kimber*,

Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part,

C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential).  Even if the prison provides for a

grievance procedure, as the DOC does, violations of those procedures do not amount to a civil

rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005)(Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra.*; *See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.)(claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures." (citations omitted)).

Thus, we will again recommend that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner be dismissed. We also will recommend that these four Defendants be dismissed with prejudice since Plaintiff was already given the opportunity to amend his pleading with respect to them.

Further, Plaintiff does not allege that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner failed to give him proper medical care for his eye injury. Plaintiff only alleges that the two new Defendants, Dr. Bohinski and Leskowski, failed to timely give him proper medical care for his eye injury. Plaintiff also alleges that Dr. Bohinski failed to treat him properly for his pre-existing eye conditions, namely glaucoma and cataracts. We find that Plaintiff has only sufficiently stated the personal involvement of Defendants Dr. Bohinski and Leskowski with respect to his Eighth

Amendment  claim that he was denied timely medical care for his eye injury.  We also find that

Plaintiff has only sufficiently stated that Dr. Bohinski failed to treat him properly for his pre-existing

eye conditions, namely glaucoma and cataracts.

In *Williams v. Klem*, 2008 WL 4453100, *7, the Court stated:

> The Eighth Amendment "requires prison officials to provide basic medical
> treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d
> 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct.
> 285, 50 L.Ed.2d 251 (1976)). In order to establish an Eighth Amendment
> medical claim, an inmate must allege acts or omissions by prison officials
> sufficiently harmful to evidence deliberate indifference to a serious
> medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235-36 (3d Cir.2004);
> *Natale v. Camden Cty. Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003).
> In the context of medical care, the relevant inquiry is whether the
> defendant was: (1) deliberately indifferent (the subjective component) to
> (2) the plaintiff's serious medical needs (the objective component).
> *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346
> (3d Cir.1987); *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1979). A serious
> medical need is one that has been diagnosed by a physician as requiring
> treatment, or one that is so obvious that a layperson would recognize the
> need for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d
> at 347. "Additionally, 'if unnecessary and wanton infliction of pain results
> as a consequence of denial or delay in the provision of adequate medical
> care, the medical need is of the serious nature contemplated by
> the Eighth Amendment.' " *Young v. Kazmerski,* 266 Fed. Appx. 191,
> 193 (3d Cir.2008) (quoting *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d
> at 347).

Thus, we will recommend that, insofar as Plaintiff is raising an Eighth Amendment denial of

proper medical care claim with respect to his July 25, 2010 eye injury, this claim be allowed to

proceed only as against Defendants Dr. Bohinski and Leskowski.  We also find that Plaintiff has

stated an Eighth Amendment denial of proper medical care claim that Dr. Bohinski failed to treat

him properly for his pre-existing eye conditions, namely glaucoma and cataracts.

16

Moreover, we find that Plaintiff does not sufficiently state the personal involvement of Defendant Davis, kitchen manager, and Defendant Jones, assistant kitchen manager, with respect to any of the alleged violations of his constitutional rights.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior."* ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* ) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

In his Second Amended Complaint, Plaintiff does not sufficiently state that Defendants Davis and Jones were personally involved with any cognizable violation of Plaintiff's constitutional rights. Nor are Defendants Davis and Jones alleged to have directed any SCI-Dallas staff to violate his rights. *Id.* Plaintiff does not allege that Defendants Davis and Jones had any personal involvement with the decision to direct Plaintiff to clean the kitchen area on July 25, 2010, with chemicals without training him and without giving him protective gear. Plaintiff does not allege that Defendants Davis and Jones were deliberately indifferent to his safety regarding his assignment to

clean the kitchen with chemicals on July 25, 2010.  Further, Plaintiff only alleges that Defendant

Casey was personally involved in the decision to have Plaintiff clean the kitchen with chemicals on

July 25, 2010, without proper training and proper gear.

The Supreme Court in *Iqbal* repeated the personal involvement necessary in a §1983 action.

In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court, citing *Iqbal,* stated:

> "To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to 'state a claim to relief that is plausible on
> its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009)
> [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.
> 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting
> to establish liability based on supervisory liability. *See Rode v. Dellarciprete,*
> 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely
> on the operation of respondeat superior, as a defendant must have
> personal involvement in a civil rights action). Innis does not allege that
> Wilson had personal knowledge of his injury and subsequently acted with
> deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these
> claims were properly dismissed."

*See also  Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D. Pa.).

Thus, we will recommend that Defendants Davis and Jones be dismissed with prejudice since

Plaintiff already had two opportunities to state a claim against these Defendants.  *See Sims v. Piazza*,

2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the

assumption of truth.")(citation omitted); *Brickell v. Clinton County Prison Bd.*, 658 F. Supp. 2d 621,

625-626 (M.D. Pa. 2009).

The remaining Defendant is Casey, the kitchen supervisor who allegedly directed Plaintiff to

clean the kitchen area with hazardous chemicals on July 25, 2010, without giving him proper

training and protective gear.  Plaintiff again alleges that Defendant Casey was deliberately indifferent

to his safety in violation of the Eighth Amendment.

We again find the instant case similar to the *Brickell* case.  In *Brickell*, the Plaintiff inmate claimed that she was severely burned when she was working in the kitchen at the Clinton County Prison and  assigned to move a container of hot grease from the stove to warmers and the grease spilled on her.  In *Brickell*, the Court found that its Plaintiff was attempting to hold Defendants liable under §1983 based on the state-created danger theory.  As in *Brickell*, we find that Plaintiff Robles is also attempting to hold Defendant Casey labile under §1983 based on the state-created danger theory.

In *Brickell*, the Court stated:

> To make out a state-created danger claim under § 1983, Brickell must meet a four-part test. *Bright v. Westmoreland County,* 443 F.3d 276, 281 (3d Cir.2006). First, " 'the harm ultimately caused [must have been] foreseeable and fairly direct.' " *Id.* (quoting *Kneipp v. Tedder,* 95 F.3d 1199, 1208 (3d Cir.1996)). Second, there must have been "a state actor [who] acted with a degree of culpability that shocks the conscience." *Id.* (citing *Schieber v. City of Philadelphia,* 320 F.3d 409, 416 (2003)). Third, there must have been a relationship between the plaintiff and the state such that "'the plaintiff was a foreseeable victim of the defendant's acts' " or that she was a " 'member of a discrete class of persons subjected to the potential harm brought about by the states' actions.' " *Id.* (quoting *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906, 913 (3d Cir.1997)). Last, a state actor must have "affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Id.* (citing *Rivas v. City of Passaic,* 365 F.3d 181, 195 (3d Cir.2004)).

658 F. Supp. 2d at 628.

We will again recommend that Plaintiff's above detailed Eighth Amendment  claim based on state-created danger be allowed to proceed only as against Defendant Casey.  We find that Plaintiff's allegations in his Second Amended Complaint of liability under the Eighth Amendment as against

Defendant Casey sufficiently state, for present screening purposes, a cognizable constitutional claim for deliberate indifference to his safety.  Plaintiff alleges that the danger of his use of chemicals created by Defendant Casey was an unjustified increase in the risk he would be injured while cleaning the kitchen at SCI-Dallas under the circumstances in which Casey failed to train him on the use of chemicals and Casey failed to give him protective gear.  Based on the above stated allegations in Plaintiff's second amended pleading, Defendant Casey is sufficiently stated to have been personally involved with Plaintiff's Eighth Amendment claim.  *See Innis v. Wilson*, 2009 WL 1608502, *2.

Additionally, we again do not find that Plaintiff has stated an Eighth Amendment conditions of confinement claim against any Defendant regarding the alleged overcrowding at SCI-Dallas, the alleged conditions in the cells, the conditions in the exercise yard, the lack of exits in the kitchen area, and the alleged unsanitary and unsafe work area conditions in the kitchen at SCI-Dallas.  (Doc. 1-1, p. 10).  Plaintiff does not sufficiently state the personal involvement of Defendants with respect to this claim, and he does not sufficiently state that he personally was subjected to all of these alleged conditions.

In *Williams v. Klem*, 2008 WL 4453100, *6-*7, the Court stated:

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). To establish an Eighth Amendment claim, Williams must show that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Farmer,* 511 U.S. at 834. In reviewing this type of claim, the courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic

necessity. As explained in *Wilson v. Seiter,* 501 U.S. 294, 304-05, 111 S.Ct. 2321, 115
L.Ed.2d 271 (1991):

Some conditions of confinement may establish an Eighth Amendment violation 'in
combination' when each would not do so alone, but only when they have a mutually
enforcing effect that produces the deprivation of a single, identifiable human need such as
food, warmth, or exercise-for example, a low cell temperature at night combined with a
failure to issue blankets. To say that some prison conditions may interact in this fashion is a
far cry from saying that all prison conditions are a seamless web for Eighth Amendment
purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and
usual punishment when no specific deprivation of a single human need exists.

In addition to showing conditions that pose a risk of serious harm, the inmate must show that
the prison official responsible for the conditions of confinement acted with "a sufficiently
culpable state of mind." *Id.* at 298. A prison official violates the Eighth Amendment when he
acts with deliberate indifference to a known objectively serious risk to a prisoner's health or
safety. *See Farmer,* 511 U.S. at 837.

Plaintiff's stated allegations in his Second Amended Compliant regarding his Eighth

Amendment conditions of confinement claim again fail to state that they posed a substantial risk of

serious harm to his own health or safety.  Nor does Plaintiff properly state the personal involvement

of any Defendant with respect to the over crowding at the prison and the other stated conditions

in the prison.   Thus, we will recommend that all of Plaintiff's Eighth Amendment conditions of

confinement claims be dismissed with prejudice as against all Defendants.

## VII.  Recommendation.

Based on the above, it is respectfully recommended that Defendants SCI-Dallas Grievance

Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance

Coordinator Varner be dismissed with prejudice, and it is recommended that Defendants Davis and

Jones be dismissed with prejudice.[9]  It is also recommended that Plaintiff's claims for monetary damages against all Defendants in their official capacities be dismissed with prejudice.

Additionally, it is recommended that Plaintiff's Eighth Amendment denial of proper medical care claim with respect to his July 25, 2010 eye injury be allowed to proceed only as against Defendants Dr. Bohinski and Leskowski.  It is also recommended that Plaintiff be allowed to proceed with his Eighth Amendment denial of proper medical care claim against Dr. Bohinski that Bohinski failed to treat him properly for his pre-existing eye conditions, namely glaucoma and cataracts. It is also recommended that all of Plaintiff's Eighth Amendment conditions of confinement claims be dismissed with prejudice as against all Defendants.

It is recommended that Plaintiff's Eighth Amendment state-created danger claim be allowed to proceed only as against Defendant Casey.

---

[9]Notwithstanding Plaintiff's *pro se* status, we do not recommend that he be permitted leave to file a third amended Complaint regarding any of his constitutional claims against Defendants  SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh, DOC Chief Grievance Coordinator Varner,  Davis,  and Jones since we find that, based on well-settled case law, he fails to state any claims against these Defendants.  Thus, we find futility of any further amendment of Plaintiff 's claims against these Defendants, and we shall not recommend Plaintiff be granted leave to again amend his action with respect to the stated Defendants.  Also, Plaintiff has been given two opportunities to amend his Complaint.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 236 (3d Cir. 2004).

Finally, it is recommended that this case be recommitted to the undersigned for further proceedings, including directing service of Plaintiff's Second Amended Complaint on remaining Defendants Casey, Bohinsky and Leskowski.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 20, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS ROBLES, | : | CIVIL ACTION NO. **1:CV-10-2663** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| J.J. CASEY, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 20, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 20, 2011**