IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARLOS ROBLES, : CIVIL ACTION NO. **1:CV-10-2663**
 :
  Plaintiff : (Chief Judge Kane)
 :
  v. : (Magistrate Judge Blewitt)
 :
J.J. CASEY, *et al.*, :
 :
  Defendants :

## REPORT AND RECOMMENDATION

### I. BACKGROUND.

On December 9, 2010, Plaintiff, Carlos Robles, an inmate at the State Correctional Institution at Dallas, Dallas, Pennsylvania ("SCI-Dallas"), filed, *pro se*, the instant civil rights action, pursuant to 42 U.S.C. § 1983, in the Luzerne County Court of Common Pleas. (Doc. 1-1). Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Doc. 1-1, p. 12). On December 29, 2010, counsel for Defendants filed a Notice of Removal pursuant to 28 U.S.C. §1441(a) and removed the action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). Defendants attached a copy of Plaintiff's Complaint and his *in forma pauperis* motion to their Notice. (Doc. 1-1).

Plaintiff's original Complaint consisted of eight typed pages. (*Id.*). In his original Complaint, Plaintiff named the following Defendants: Kitchen Steward J. J. Casey; Kitchen Manager Gary Davis; Assistant Kitchen Manager Kevin Jones; Superintendent Jerome Walsh; Grievance Coordinator Robin Lucas; Safety Officer Erik Sowga; Grievance Coordinator Robin Lucas; and, Department of Corrections Chief Grievance Coordinator Dorina Varner. (Doc. 1-1, pp. 3-4).

Plaintiff averred that on July 25, 2010, while assigned to work in the kitchen area at SCI-Dallas, he was directed by Defendant Casey to clean the kitchen with a bucket filled with chemicals. (Doc. 1-1, p. 5). Plaintiff asserted that he was not advised that the bucket contained hazardous chemicals which required him to wear safety apparel and equipment. (*Id.*). Plaintiff alleged that while he was cleaning, "the chemical splashed into [his] eyes causing severe burning to his eye." (*Id.*).

Plaintiff claimed that each Defendant was negligent and/or reckless and was deliberately indifferent to his safety, which was in violation of his constitutional rights. (Doc. 1-1, p. 9). Plaintiff additionally stated that "he is not being granted equal protection as a Hispanic American with limited language capacity where other facilities insure that proper training is given in both English and Spanish to ensure that they are able to fulfill their assigned job roles safely." (Doc. 1-1, pp. 9-10). Plaintiff further claimed that "the failure of the Defendants to provide any training to [him] resulted in his physical injury and loss of vision which is now permanent and acting as a life altering handicap to his person." (Doc. 1-1, p. 10).

Additionally, Plaintiff asserted that the overpopulation at SCI-Dallas resulted in living conditions that were cruel and unusual. (*Id.*). Plaintiff further claimed that there were unsanitary and unsafe conditions in the kitchen area where he was assigned to work. (*Id.*).

On January 7, 2011, we screened Plaintiff's original Complaint as required under the PLRA, 28 U.S.C. § 1915(e), and issued a Report and Recommendation. (Doc. 6). We recommended that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh and DOC Chief Grievance Coordinator Varner be dismissed, and that Defendants Davis and Jones

be dismissed. (Doc. 6, p. 18). We further recommended that Plaintiff's claims for monetary damages against all Defendants in their official capacities be dismissed. (*Id.*). Additionally, we recommended that insofar as Plaintiff was deemed as raising an Eighth Amendment denial of proper medical care claim with respect to his July 25, 2010 eye injury, this claim be dismissed as against all Defendants. (*Id.*). Further, we recommended that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed as against all Defendants. (*Id.*).

We also recommended that Plaintiff's Fourteenth Amendment equal protection claim be dismissed as against all Defendants. (Doc. 6, p. 19). Additionally, we recommended that Plaintiff's Eighth Amendment state-created danger claim be allowed to proceed only as against Defendant Casey. (*Id.*). Finally, we recommended that this case be recommitted to the undersigned for further proceedings, including directing service of his Plaintiff's Complaint on remaining Defendant Casey. (*Id.*).

On February 3, 2011, the Court issued a Memorandum and Order adopting our Report and Recommendation, directing as follows:

1.  Any claims for monetary damages against all named Defendants in their official capacitates are **DISMISSED WITH PREJUDICE;**

2.  Plaintiff's Fourteenth Amendment Equal Protection claims against all named Defendants are **DISMISSED WITH PREJUDICE;**

3.  Any Eighth Amendment denial of proper medical care claims against all named Defendants are **DISMISSED WITHOUT PREJUDICE;**

4.  Plaintiff's Eighth Amendment conditions of confinement claims are against all named Defendants are **DISMISSED WITHOUT PREJUDICE;**

5.  All claims against Defendants Davis, Jones, Lucas, Sowga, Walsh, and Varner are **DISMISSED WITHOUT PREJUDICE;**

6.  Plaintiff's Eighth Amendment state-created danger claim **SHALL BE** permitted to proceed against Defendant Casey;

7.  Plaintiff **SHALL BE** given leave to file an amended complaint within ten days of the date of this order;

8.  Because Plaintiff has been granted leave to file an amended complaint, Defendants' motion to dismiss (Doc. No. 4) is **DENIED** as moot. Defendants  may renew the motion to dismiss if Plaintiff fails to file an amended complaint or if the amended complaint fails to state a claim.

9.  Plaintiff's motion for extension of time to respond to Defendants' motion to dismiss (Doc. No. 8) is **DENIED** as moot.

10.  The above captioned action **SHALL BE** referred to Magistrate Judge Blewitt for pre-trial management.

(Doc. 10, pp. 7-8).

On March 16, 2011, Plaintiff filed his Amended Complaint. (Doc. 15). We found that Plaintiff's Amended Complaint was not a proper pleading under Federal Rules of Civil Procedure 8(a) and 10, and, thus, we directed Plaintiff to file a second Amended Complaint. (Doc. 16, p. 7). It was not clear who Plaintiff named as Defendants in his Amended Complaint, nor was it clear as to the alleged unconstitutional conduct of each one of these Defendants. (Doc. 16, p. 4). Further, Plaintiff added two new Defendants, RNS Leskowsky and Dr. Bohinski, in his Amended Complaint, and he did not include a separate request for relief. (*Id.*). Plaintiff also included several pages of argument in his Amended Complaint which were not appropriate in a pleading. (*Id.*).

Thus, on March 18, 2011, we issued an Order and directed as follows:

1. Plaintiff shall file his Second Amended Complaint within **fifteen (15) days** of the date of this Order.

2. Plaintiff's Second Amended Complaint shall properly allege a claim under 42 U.S.C. §1983 against a proper Defendant as specified in the foregoing Order.

4

3. Plaintiff's Second Amended Complaint shall be filed to the same docket number as the instant action and shall be entitled "Second Amended Complaint".

4. Plaintiff's Second Amended Complaint shall be complete in all respects. It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Plaintiff's Second Amended Complaint shall also be "simple, concise, and direct", as required by the Rules of Civil Procedure, and it should not contain argument. Fed.R.Civ.P. 8(e)(1).

5. Failure of Plaintiff to timely file his Second Amended Complaint will result in a recommendation that this action be dismissed.

(Doc. 16, pp. 7-8).

On March 29, 2011, Plaintiff filed his Second Amended Complaint consisting of twenty-three pages. (Doc. 17). We then screened Plaintiff's Second Amended Complaint.

On April 20, 2011, we issued a Report and Recommendation, recommending that Defendants SCI-Dallas Grievance Coordinator Lucas, Safety Officer Sowga, Superintendent Walsh, and Department of Corrections Chief Grievance Coordinator Varner be dismissed from this action with prejudice. (Doc. 20, pp. 21-22). We additionally recommended that Plaintiff's claims for monetary damages against all Defendants in their official capacities be dismissed with prejudice. (Doc. 20, p. 22).

Further, we recommended that Plaintiff's Eighth Amendment denial of proper medical care claims regarding Plaintiff's eye injury on July 25, 2010, as well as his pre-existing eye conditions, be allowed to proceed only as against Defendants Dr. Bohinski and Leskowski. (*Id.*). We also recommended that Plaintiff's Eighth Amendment conditions of confinement claims be dismissed with prejudice as against all Defendants. (*Id.*).

Moreover, we recommended that Plaintiff's Eighth Amendment state-created danger claim be permitted to proceed only as against Defendant Casey. (*Id.*). Finally, we recommended that this action be recommitted to the undersigned for further proceedings, including directing service of Plaintiff's Second Amended Complaint on remaining Defendants Casey, Bohinski, and Leskowski. (Doc. 20, p. 23).

On June 8, 2011, the District Court adopted, in part, our Report and Recommendation. (Doc. 23). Specifically, the Court ordered as follows:

1.   All claims against Defendants Lucas, Sowga, Walsh, and Varner are **DISMISSED WITH PREJUDICE;**

2.   The conditions of confinement claim against Defendants Davis and Jones are **DISMISSED WITH PREJUDICE;**

3.   The Eighth Amendment claims arising from the July 25, 2010 eye injury against Defendants Davis and Jones may proceed;

4.   Plaintiff's Eighth Amendment denial of proper medical care claim against Defendants Bohinski and Leskowsi arising from the July 25, 2010 eye injury may proceed;

5.   Plaintiff's Eighth Amendment denial of medical care claim against Defendant Bohinski regarding Defendant Bohinski's failure to treat Plaintiff's pre-existing eye conditions may proceed;

6.   Plaintiff's Eighth Amendment state-created danger claim against Defendant Casey may proceed;

7.   To the extent that Plaintiff raises a claim for money damages against any named Defendant in his official capacity, those claims are **DISMISSED WITH PREJUDICE;** and

8.   To the extent that Plaintiff raises a claim based on any Defendant's handling of the grievance procedure, those claims are **DISMISSED WITH PREJUDICE**.

(Doc. 23, p. 10).

Thus, the District Court allowed the following of Plaintiff's claims to proceed: (1) Plaintiff's Eighth Amendment claims against Defendants Davis and Jones arising from the July 25, 2010 eye injury; (2) Plaintiff's Eighth Amendment denial of proper medical care claims against Defendants Dr. Bohinski and Leskowski arising from the July 25, 2010 eye injury; (3) Plaintiff's Eighth Amendment denial of proper medical care claim against Defendant Dr. Bohinski regarding failure to treat pre-existing eye conditions; and (4) Plaintiff's Eighth Amendment state-created danger claim against Defendant Casey.

On June 10, 2011, in compliance with the Court's Document 23 Order, we directed service of Plaintiff's Document 17 Second Amended Complaint upon the five (5) remaining Defendants. (Doc. 24). All Defendants were served, and on August 3, 2011, Defendants Davis, Jones, Leskowki, and Casey ("Corrections Defendants") jointly filed an Answer to the Second Amended Complaint with affirmative defenses. (Doc. 29).

On August 12, 2011, Defendant Dr. Bohinski filed a Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 30). Defendant Dr. Bohinski filed a Brief in Support of his Motion on August 22, 2011, with exhibits. (Doc. 31). Defendant Dr. Bohinski argued that Plaintiff's claims against him should be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to these claims, that Plaintiff's Eighth Amendment denial of proper medical care claims against him fail to state a cognizable claim, and that Plaintiff failed to timely file a Certificate of Merit ("COM") with respect to his claims sounding in medical professional negligence as required by Pennsylvania Rule of Civil

Procedure 1042.3. (Doc. 31, p. 3).[1]

On September 7, 2011, Plaintiff filed a Brief in Opposition to Defendant Dr. Bohinski's Motion. (Doc. 32). Also on September 7, 2011, Plaintiff filed a document entitled "Certificate of Merit" ("COM") stating that he "does hereby certify that [his present § 1983 action] does not require expert testimony of an appropriate licensed professional commensurate with Pa.R.C.P. No. 1042.3(a)(3)." (Doc. 34). Plaintiff additionally stated that his case "is one of such obvious nature [that] it obviates the necessity for expert testimony as the deficiencies in care are so blatant that a layman can clearly determine their existence." (*Id.*).

On September 12, 2011, Defendant Dr. Bohinski filed a Supplement to his dispositive motion in response to Plaintiff's Certificate of Merit. (Doc. 36). Defendant Dr. Bohinski stated that Plaintiff's COM was not timely filed and that Plaintiff conceded that he was not raising any medical professional negligence against him because Plaintiff stated that his claims do not require medical expert testimony. (Doc. 36, p. 2).

On January 4, 2012, we issued a Report and Recommendation on Defendant Dr. Bohinski's Document 30 dispositive motion, recommending that it be granted with respect to all of Plaintiff's claims against him and that Defendant Dr. Bohinski be dismissed with prejudice from this action. (Doc. 45, p. 26). Notwithstanding Plaintiff's *pro se* status, we did not recommend that Plaintiff be permitted leave to file a third amended complaint regarding any of his constitutional claims against Defendant Dr. Bohinski because we found that Plaintiff failed to exhaust his remedies and it had

---

[1]With respect to his alternative Summary Judgment Motion, Defendant Dr. Bohinski did not file a Statement of Material Facts as required under Local Rule 56.1. *See* U.S. Dist. Ct. Rules M.D. Pa., LR 56.1.

become too late to do so. (Doc. 45, p. 26 n.5). We also found futility in allowing Plaintiff to amend his negligence claims against Defendant Dr. Bohinski, and, as such, we did not recommend that Plaintiff be granted leave to again amend with respect to Defendant Dr. Bohinski, as he had already been given two opportunities to amend his pleading. (*Id*.).

On January 19, 2012, Plaintiff filed objections to our January 4, 2012, Report and Recommendation. (Doc. 49). On January 26, 2012, Defendant Dr. Bohinski filed a Brief in Opposition to Plaintiff's objections. (Doc. 53).

On February 6, 2012, the District Court issued an Order adopting our January 4, 2012 Report and Recommendation in part. (Doc. 59. *See also* 2012 WL 382986). Specifically, the Court ordered that Defendant Dr. Bohinski's Document 30 Motion be granted with respect to all of Plaintiff's Eighth Amendment claims against Bohinski but denied Dr. Bohinski's Motion with respect to Plaintiff's medical malpractice claims. (Doc. 59, p. 7). The Court also referred the action back to the undersigned for further pre-trial proceedings. (*Id*.). On February 7, 2012, we issued an Order directing Defendant Dr. Bohinski to file an Answer to Plaintiff's Second Amended Complaint within ten (10) days. (Doc. 60). On February 17, 2012, Defendant Dr. Bohnski filed his Answer to the Second Amended Complaint. (Doc. 61).

Meanwhile, on January 31, 2012, Defendants Casey, Davis, Jones, and Leskowki (collectively, "Corrections Defendants") filed a Motion for Leave to File an Amended Answer to the Second Amended Complaint, claiming that they inadvertently neglected to address certain allegations in their original Answer. (Doc. 54.). These Defendants additionally filed their Proposed Amendment Answer and a Brief in Support of their Motion on January 31, 2012. (Docs. 55 & 57).

On February 24, 2012, we issued an Order granting the Corrections Defendants' Motion for Leave to File an Amended Answer, and these Defendants filed their Amended Answer on February 29, 2012. (Docs. 63 & 64).

On March 2, 2012, the Corrections Defendants filed a Motion for Summary Judgment, asking the Court to find that Plaintiff failed to exhaust available administrative remedies and that they did not act with deliberate indifference to any risk of serious harm to the Plaintiff. (Doc. 66, pp. 2-3).  Also on March 2, 2012, the Corrections Defendants filed a Brief in Support of their Motion for Summary Judgment and a Statement of Facts. (Docs. 67 & 68). On May 3, 2012, Plaintiff filed a Response to the Corrections Defendants' Statement of Facts and a Brief in Opposition to their Motion for Summary Judgment. (Docs. 74 & 75). On May 17, 2012, the Corrections Defendants filed a Reply Brief in response to Plaintiff's Brief in Opposition. (Doc. 78).

Additionally, on April 19, 2012, Defendant Dr. Bohinski filed a Motion for Summary Judgment with respect to Plaintiff's remaining claims against him. **(Doc. 73).** On May 3, 2012, Defendant Dr. Bohinski filed a Statement of Facts and a Brief in Support on his Motion. (Docs. 76 & 77). Attached to his Statement of Facts, Defendant Dr. Bohinski filed three exhibits: 1-page from the transcript of Plaintiff's first deposition (1-31-12);   a complete copy of Plaintiff's second deposition testimony (3-7-12) with exhibits;  and an Unsworn Declaration of Dr. Bohinski. (Doc. 76). Defendant Dr. Bohinski also attached several exhibits (1-18)  to his Declaration. On July 10, 2012, Plaintiff filed a Brief in Opposition to Defendant Dr. Bohinski's Motion for Summary Judgment, along with an Unsworn Declaration and an Answer to the Document 76 Statement of Facts. (Docs. 83-85). On July 13, 2012, Defendant Dr. Bohinski filed a Reply Brief in response to

Plaintiff's Brief in Opposition. (Doc. 86).

Both Defendant Dr. Bohinski's Document 73 Summary Judgment Motion and the Corrections Defendants' Document 66 Summary Judgment Motion are ripe for disposition. This Report and Recommendation ("R&R") will address only Defendant Dr. Bohinski's dispositive motion. **(Doc. 73)**. We will incorporate the background of this case in our following R&R that will address the Corrections Defendants' Summary Judgment Motion.  **(Doc. 66)**.

## II. SUMMARY JUDGMENT STANDARD.

A motion for summary judgment may not be granted unless there is not genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving party. *Childers*, 842 F.2d at 694 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd.*

11

*mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). As such, the court must accept the nonmoving party's allegations as true and resolve any conflicts in his or her favor. *Id.* (*citing Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).[2]

## III. ALLEGATIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT (DOC. 17).

Plaintiff named the following Defendants in his Second Amended Complaint: Kitchen Steward J.J. Casey; Kitchen Manager Gary Davis; Assistant Kitchen Manager Kevin Jones; Superintendent Jerome Walsh; Grievance Coordinator Robin Lucas; Safety Officer Erick Sowga; Chief Grievance Coordinator Robin Lucas; Thomas Leskowski, RNS; and, Dr. Bohinski. (Doc. 17, pp. 1-2).

Plaintiff alleges that prior to the July 25, 2010 incident in the prison kitchen, he reported to the medical department at SCI-Dallas on several occasions for loss of sight "due to what he believed to be Glaucoma." (Doc. 17, p. 14, ¶ 63). Plaintiff then alleges as follows with respect to Defendant Dr. Bohinski[3]:

---

[2]*See also Allen v. Fletcher*, Civil Action No. 3:07-0722, 2009 WL 1542767, at *2 (M.D. Pa. June 2, 2009) (outlining the summary judgment standard).

[3]Dr. Bohinski was not named as a Defendant in Plaintiff's original Complaint. (Doc. 1-1).

> [Plaintiff] was seen by defendant Bohinski and diagnosed with said disease and was summarily told that they would not pay for the removal of the blockage until it completely covered his eye as they didn't have the money to pay for something that was not life threatening such as glaucoma ... The plaintiff informed the defendant that he worked in the kitchen and had loss of depth perception and equilibrium which concerned him since it was unsafe in the kitchen ... The defendant explained that he saw no reason why he couldn't work and would clear him regardless of his concerns.

(Doc. 17, p. 14, ¶¶ 64-66).

Plaintiff avers that during his work assignment in the kitchen at SCI-Dallas, he observed on numerous occasions that the kitchen staff Defendants saw inmates working with hazardous chemical without safety equipment or training. (Doc. 17, p. 14, ¶ 67). Plaintiff claims that when he was working as a cook, he was directed on numerous occasions by kitchen staff Defendants to prepare rotten food that was infested with bugs and to serve it on filthy and non-sanitized trays with non-sanitized silverware. (Doc. 17, pp. 14-15, ¶ 68). Plaintiff further asserts that he spoke to Defendant Superintendent Jerome Walsh about the horrible food, and Walsh told him that he did not care. (Doc. 17, p. 15, ¶ 69). Plaintiff also alleges that he saw Walsh observe inmates as they worked without safety gear in violation of DOC policy. (*Id*. at ¶ 70). Moreover, Plaintiff avers that he saw all Defendants except for Defendant Varner observe inmates as they worked without safety equipment while using hazardous materials. (*Id*. at ¶ 71). Plaintiff alleges that Defendants never directed inmates to wear safety gear nor did they question the safety hazards that violated DOC policy. (*Id*. at ¶ 72).

Plaintiff claims that on July 25, 2010, while he was assigned to work in the kitchen area at SCI-Dallas, he was directed by Defendant Casey to clean grease in the kitchen with hazardous chemicals. (*Id*. at ¶¶ 74-75). Plaintiff alleges that he obeyed this order and that while he was

cleaning, "the chemical he was issued get [sic] into his eye." (Doc. 17, p. 16, ¶ 76). Plaintiff asserts that the "burning injury to his eyes [was the] result of lack of the issuance of safety equipment." (*Id*. at ¶ 81).

Plaintiff avers that he immediately reported the incident and was taken to the prison infirmary, where he was was provided with a saline wash for his eye. (*Id*. at ¶¶ 77-79). Plaintiff additionally asserts:

> While [Plaintiff] waited, the escorting officers were instructed per order of Dr. Bohinski and Thomas Leskowski who was acting Health Care Administrator to return [Plaintiff] back to the facility to permit the institutionally contracted eye doctor to examine him at a later date rather than pay a doctor assigned from Wilkes Barre General where he was initially being treated.

(*Id*. at ¶ 79).

Plaintiff submits that he experienced an inordinate delay in medical care for his eye, which contributed to the loss of sight from which he currently suffers. (*Id*. at ¶ 80).

Plaintiff avers that prior to his July 25, 2010 eye injury, Defendant Dr. Bohinski delayed treatment for his severe cataracts in his eye because it was not a life-threatening condition. (*Id*. at ¶ 81). Plaintiff states that he was still required to work despite his cataracts and lack of depth perception and that Dr. Bohinski ignored his concerns. (*Id*. at ¶ 82).

Plaintiff asserts that he filed a grievance regarding the incident in the kitchen to the proper official, complaining that prison staff failed to provide him with protective gear and adequate training before he was given chemicals with which to clean. (Doc. 17, p. 17, ¶ 84). Plaintiff alleges that Defendant Lucas, who was responsible for addressing inmate grievances, assigned Defendant Sowga to conduct an investigation and file a response to Plaintiff's grievance. (*Id*. at ¶¶ 84-85).

14

Plaintiff then avers:

> Defendant Sowga contacted Defendant Dan Davis and informed him that a complaint had been lodged and that he should have inmates falsify documents claiming that they had received safety training that had never been given ... Defendant Davis began ordering inmates to falsify safety training documents ... Defendant Sowga then responded to the plaintiff's complaint falsifying facts on a government document alleging that the plaintiff "had" in fact been given training that he was well aware he had not received ... Defendant Lucas, who was well aware that the plaintiff's [sic] was being subject to hazardous conditions complained of long before his injury then submitted a falsified document in complicity with defendant Sowga stating that the plaintiff had received safety training she was well aware he had not received prior to his injury.

(*Id.* at ¶¶ 86-89).

Plaintiff alleges that Defendants Lucas and Sowga denied his grievance and that he appealed that decision to Defendant Walsh on August 25, 2010. (Doc. 17, p. 18, ¶ 90). According to Plaintiff, Defendant Walsh denied the appeal, even though he had made numerous tours of the kitchen where he observed inmates work without safety gear. (*Id.* at ¶¶ 91-92).

Plaintiff states that he then finally appealed his grievance to the DOC Chief Grievance Coordinator Defendant Varner but that she ignored his complaints without further investigation. (*Id.* at ¶ 95). Thus, Plaintiff again implies that he completed the DOC grievance process.[4]

Plaintiff indicates that he is raising Eighth Amendment conditions of confinement claims

---

[4] It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a § 1983 action. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Porter*, the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* However, defendants have the burden to plead failure to exhaust as an affirmative defense. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

regarding prison overcrowding, insufficient housing space and lighting in the cells, insufficient heating, disease outbreaks, lack of hot water for days, inability to flush toilets for days, and lack shower opportunities for inmates for days. (Doc. 17, p. 19, ¶ 96). Plaintiff further asserts Eighth Amendment conditions of confinement claims regarding substandard food, unsanitary food service, lack of safety training and equipment, lack of emergency exits, and insect infestation. (*Id*.). Plaintiff also avers that the cells have poor ventilation, that there is overcrowding in the exercise yard, that there is lack of medical training, and that the medical staff is incompetent. (*Id*.).

Plaintiff additionally claims that psychiatric inmates and RHU inmates are not treated properly, although Plaintiff does not state that he was either a psychiatric inmate or an RHU inmate. (Doc. 17, p. 20, ¶96(e)).[5]

In his second amended pleading, Plaintiff specifically states allegations as against Defendant Davis, kitchen manager, and Defendant Jones, assistant kitchen manager. (Doc. 17, pp. 4-6). Plaintiff avers that these two Defendants knew of the failure of staff to properly train inmates in safety precautions when using chemicals and allowed the staff to neglect to give inmates safety equipment. Plaintiff also asserts that these Defendants were involved in the falsification of documents after he was injured when they ordered staff to make inmates sign untrue documents reflecting that they received safety training. Plaintiff further alleges that these two Defendants knew of the hazardous and unsanitary working conditions in the kitchen and of the substandard food

---

[5] Plaintiff did not seek to file this case as a class action, and, thus, he has no standing to assert any claims on behalf of other inmates. *See Prison Soc. v. Cortes*, Civil Action No. 1:CV-97-1731, 2009 WL 1653543, at *4 (M.D. Pa. June 11, 2009) (*quoting Warth v. Seldin*, 422 U.S. 490, 499 (1975)) ("'[T]he Plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'").

being served. Plaintiff additionally avers that these Defendants were aware of the overcrowding in the kitchen and of the lack of exits.

As relief, Plaintiff requests $250,000 compensatory damages for pain and suffering for loss of sight as well as $250,000 punitive damages. (Doc. 17, p. 22). Plaintiff also requests injunctive relief. (*Id.* at pp. 22-23). Plaintiff did not state whether he sued Defendants in their individual and/or their official capacities.[6]

## IV. MATERIAL FACTS.

As mentioned, the Court has allowed the following of Plaintiff's claims to proceed: (1) Plaintiff's medical malpractice care claims against Defendant Dr. Bohinski regarding failure to treat pre-existing right eye conditions and regarding improper treatment for Plaintiff's July 25, 2010 chemical splashing accident and eye injury; (2) Plaintiff's Eighth Amendment claims against Defendants Davis and Jones arising from his July 25, 2010 eye injury; (3) Plaintiff's Eighth Amendment denial of proper medical care claims against Defendant Leskowski arising from his July 25, 2010 eye injury; and (4) Plaintiff's Eighth Amendment state-created danger claim against Defendant Casey regarding his July 25, 2010 chemical splashing accident and eye injury. (Doc. 23).

As stated, Defendant Dr. Bohinski filed his Statement of Facts ("SMF") with citation to the evidence (Doc. 76), as required by Local Rule 56.1, M.D. Pa., which support his position that the evidence shows he did not breach any duty owed to Plaintiff with respect to Plaintiff's eye

---

[6]As stated above, the Court dismissed with prejudice Plaintiff's claims for monetary damages against Defendants in their official capacities.

conditions and that Plaintiff's medical malpractice claims against him have no merit.[7] (Doc. 76).

Also, Defendant Dr. Bohinski submitted exhibits with his SMF to support each one of his

contentions.  (Doc. 76-1 to 76-3). Plaintiff failed to file his response to Defendant Dr. Bohinski 's

SMF, and we afforded him with ample opportunity to do so.  Rather, as stated, Plaintiff simply filed

a 1-sentence denial of Defendant Dr. Bohinski's SMF.  (Doc. 85).

   As Plaintiff recognizes (Doc. 85), Defendant Dr. Bohinski's 11-page Statement of Facts (Doc.

76) did not comport with Local Rule 56.1, M.D. Pa., since it failed to state the separate facts in

separate numbered paragraphs.   However,  Defendant Dr. Bohinski's Statement of Facts properly

cites to the evidence in the record to support each fact as required.  (Docs. 76 & 76-1 to 76-3).

Also, we agree with Defendant Dr. Bohinski (Doc. 86, p. 1, n. 1) that Plaintiff's 1-sentence denial

of  Defendant Dr. Bohinski's entire Statement of Facts based  on Defendant's failure to state his

facts in separate numbered paragraphs is not an acceptable response.  As such, we will accept all

of  Defendant Dr. Bohinski's Statement of Facts since the evidence supports them.

   Since Defendant Dr. Bohinski  has properly filed his SMF in support of his Summary

Judgment Motion (Doc. 76), as required by Local Rule 56.1 of M.D. Pa., and his facts are all

properly supported by evidence, and since Plaintiff failed to properly respond to Defendant's SMF,

---

[7]As Plaintiff recognizes (Doc. 85), Defendant Dr. Bohinski's 11-page Statement of Facts (Doc. 76) did not comport with Local Rule 56.1, M.D. Pa., since it failed to state the separate facts in separate numbered paragraphs.   However,  Defendant Dr. Bohinski's Statement of Facts properly cites to the evidence in the record to support each fact as required.  (Docs. 76 & 76-1 to 76-3). Also, as indicated below, we agree with Defendant Dr. Bohinski (Doc. 86, p. 1, n. 1) that Plaintiff's 1-sentence denial of  Defendant Dr. Bohinski's entire Statement of Facts based on Defendant's failure to state his facts in separate numbered paragraphs is not an acceptable response.  As such, we will accept all of  Defendant Dr. Bohinski's Statement of Facts since the evidence supports them.

we shall accept all of Defendant's facts contained in his SMF. Further, none of Defendant Dr. Bohinski's facts in his SMF are properly disputed by Plaintiff with citation to evidence. Thus, we find that Plaintiff has not properly responded to Defendant Dr. Bohinski's SMF as required by Local Rule 56.1, M.D. Pa.  *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michatavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers,* 2008 WL 3540526 (M.D. Pa.)*; Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed).  Regardless of Plaintiff's failure to properly deny Defendant Dr. Bohinski's statement of facts, we accept Defendant's statement of facts since they are all supported by his evidence.  (Docs. 76-1 to 76-3, pp. 1-93).

Defendant Dr. Bohinski's Statement of Facts addresses the following facts.  (Doc. 76).

Plaintiff has been imprisoned at SCI-Dallas approximately since 2003, and he is still incarcerated there currently while serving a life sentence for first degree murder. (Doc. 76, p. 1). Defendant Dr. Bohinski has been a doctor of osteopathy since 1991 and is licensed to practice medicine in Pennsylvania. (Doc. 76, p. 2). Defendant Dr. Bohinski has also been board-certified to practice family medicine since 1991, and he has been employed in this capacity in the correctional healthcare field through Prison Health Services, Inc., now called Corizon Health, Inc., since 1995. (*Id.*). Defendant Dr. Bohinski is currently the Medical Director at SCI-Dallas and has been since 2001. (*Id.*). Defendant Dr. Bohinski was certified in correctional healthcare in 2003.

(*Id*.).[8]

Defendant Dr. Bohinski states that "Plaintiff's optometric history is significant for bilateral pterygium, benign growths of the conjunctiva (the clear thin tissue that overlays the white part of the eye)." (*Id*.).   Defendant Dr. Bohinski further submits that "[p]terygium is a non-emergent, benign, painless and slowly progressive condition that typically does not require any treatment unless and until it grows to the extent that it interferes with vision." (Doc. 76, pp. 2-3). Dr. Bohinski claims that pterygium requires simple monitoring and that individuals with the condition may also receive specialized medical advice from an ophthalmologist as needed. (Doc. 76, p. 3).  Defendant Dr. Bohinski correctly states that Plaintiff admitted in his deposition that he has been under ongoing monitoring by himself and other optometric providers for Plaintiff's right eye condition since 2003. (*Id*. & Doc. 76-2, p. 71).

Defendant Dr. Bohinski states that individuals with pterygium risk a high rate of recurrence even after surgical removal. (Doc. 76, p. 3). As far as Defendant Dr. Bohinski is aware, from his own knowledge and from Plaintiff's medical records at SCI-Dallas, Plaintiff has never been professionally diagnosed with cataracts or glaucoma in either of his eyes, "despite Plaintiff's subjective and unsupported claims as a layperson." (*Id*.). Plaintiff's medical records do demonstrate, however, that he was diagnosed with bilateral pterygium on June 24, 2003. (*Id*.). Defendant Dr. Bohinski further asserts that as of January 4, 2008, approximately four and one-half (4½) years later, Plaintiff suffered only a "'small' pterygium in his right eye." (*Id*.). On January 7, 2008, Plaintiff did not report any

---

[8]As stated above, since Defendant Dr. Bohinski's Statement of Facts properly cites to the evidence in the record to support each fact stated therein, we simply refer to his Doc. 76 Statement of Facts.  (*See* Docs. 76-1 to 76-3).

visual disturbance in his eyes, and on June 15, 2009, an approximate additional one and one-half (1½) years later, Plaintiff's medical records indicate that the pterygium in his right eye was "'not occluding pupil' (the opening located in the center of the iris of the eye that allows light to enter the retina, and by which we see)." (Doc. 76, pp. 3-4).

Defendant Dr. Bohinski alleges that on November 12, 2009, he saw Plaintiff at a "scheduled clinic" and that Plaintiff "inquired as to the status of his right eye pterygium." (Doc. 76, p. 4). Defendant Dr. Bohinski made a professional decision at that time to consider proceeding with an excision of Plaintiff's pterygium in his right eye after consulting an ophthalmologist. (*Id.*). According to Defendant Dr. Bohinski, "[t]here was no 'delay' in making this decision, nor were financial considerations taken into account in this regard; rather, previous excision was not indicated." (*Id.*). Dr. Bohinski notes that Defendant Leskowsky, SCI-Dallas' Registered Nurse Supervisor ("RNS"), had always concurred with this medical opinion. (Doc. 76, p. 4,  n.2). Defendant Dr. Bohinski further states: "Although Plaintiff alleges in his Second Amended Complaint that Dr. Bohinski improperly delayed the process in order to save money [ ], he conceded at his deposition that in reality he doesn't know why the timing of events occurred as it is. [ ]." (Doc. 76, p. 4)(internal citations omitted).

According to Defendant Dr. Bohinski Plaintiff's problems with the vision in his right eye over the past few years were entirely separate from his pterygium but, rather, were a result "from exposure to an irritants and conjunctivitis (infection of the membrane lining the eye lids)." (Doc. 76, pp. 4-5). Dr. Bohinski asserts that an ophthalmologist outside of SCI-Dallas consulted with Plaintiff on December 17, 2009, and recommended "the non-emergent scheduling of excision of

Plaintiff's right eye pterygium by Dr. McGraw." (Doc. 76, p. 5). Defendant Dr. Bohinski correctly point out that Plaintiff testified he remembers being advised that the procedure was not emergent. (*Id.* & Doc. 76-2, p. 55).

Defendant Dr. Bohinski states that Plaintiff was first scheduled to undergo his non-emergent excision on July 14, 2010, with respect to his right eye pterygium  but that the procedure did not occur due to a scheduling conflict of the ophthalmologist who was not a prison doctor; accordingly, Plaintiff's excision was rescheduled for July 22, 2010. (*Id.*). Defendant Dr. Bohinski asserts that on July 22, 2010, an "unanticipated institutional emergency" occurred at SCI-Dallas that resulted in a "lock-down" for security purposes and precluded the ophthalmologist from entering the prison to perform the procedure on Plaintiff. (*Id.*). Dr. Bohinski notes that on July 22, 2010, Plaintiff indicated that his right eye pterygium was "getting larger and [that he was just] starting to feel irrigation." (Doc. 76, p. 6) (alteration in original). Plaintiff's non-emergent excision was then rescheduled for August 20, 2010. (Doc. 76, pp. 5-6).

Defendant Dr. Bohinski asserts that on July 25, 2010, Plaintiff was brought to the Medical Department at SCI-Dallas because he was "complaining that he had a germicidal rinse accidentally splash into his right eye while working in the kitchen." (Doc. 76, p. 6). This fact is also alleged in Plaintiff's pleadings.  Dr. Bohinski notes that Plaintiff's position in the kitchen at SCI-Dallas was voluntary and that Plaintiff had never indicated to Dr. Bohinski that he was unable to work in the kitchen due to vision problems, even though "Plaintiff pleads to the contrary in his Second

Amended Complaint." (*Id.*).[9] Also, Defendant Dr. Bohinski correctly [point out that Plaintiff testified the chemical splashing accident had nothing to do with Plaintiff's vision problems that he had. (Doc. 76-2, p. 37).   According to the record, the prison Medical Department staff immediately evaluated Plaintiff's right eye, which "was flushed for approximately twenty (20) minutes to one-half (½) hour with sterile eye wash and a moist sterile dressing was applied to his right eye." (Doc. 76, pp. 6-7 & Doc. 76-3, ¶ 33).   Plaintiff admitted this.  (Doc. 76-2, p. 40).

Defendant Dr. Bohinski then states that the record shows Plaintiff was taken to the Emergency Department at Wilkes-Barre General Hospital for further examination and care, where he was diagnosed only with irritation, and his eye "was again flushed using a Morgan lens with 1000 cc's of normal saline solution." (Doc. 76, p. 7). Plaintiff admitted this.  (Doc. 76-2, pp. 40-41).

Dr. Bohinski submits that the treating optometrist in the Hospital Emergency Department, Dr. Blase, approved of Plaintiff's medical care up to then and prescribed him eye drops and ointment (Tobradex). (Doc. 76, p. 7).  While Plaintiff asserts that at least two (2) other doctors were consulted in the Emergency Department, he is not aware if any of the treating physicians were optometrists. (*Id.* & (Doc. 76-2, pp. 41-42). Defendant Dr. Bohinski states that "[w]hile Plaintiff asserts in his Second Amended Complaint [ ] that Dr. Bohinski called the Emergency Department and prevented an involvement by the consulting optometrist, once again, he [Plaintiff] testified at his deposition that he actually does not know what happened in this regard." (*Id.)* (internal citation

---

[9]Defendant Dr. Bohinski additionally notes that other than the July 25, 2010 incident at issue regarding the "chemical splash," Plaintiff's only injuries while working in the kitchen were "minor burns as occur as a matter of course to cooks," and this further indicates that Plaintiff's vision did not inhibit his ability to work in the kitchen. (Doc. 76, p. 6, n.5).

omitted). Plaintiff admitted this.  (Doc. 76-2, p. 43). Dr. Bohinski submits that he was not personally involved in Plaintiff's treatment at the Hospital following the July 25, 2010 chemical slashing accident. (Doc. 76, p. 7, n.6).   The record supports Dr. Bohinski's contention.

Defendant Dr. Bohinski claims that on "July 26, 2008," (sic) Plaintiff presented at the Medical Department at SCI-Dallas and indicated that his right eye "already 'feels much better now.'" (Doc. 76, p. 8).  The correct date was July 26, 2010.  (Doc. 76-3,  p. 76).  Over the days following, SCI-Dallas medical staff treated Plaintiff's right eye irritation with "the prescribed eye drops/ointment, as well as an eye patch as needed, anti-inflammatory/pain relieving medications, antibiotic medication (gentamycin) and rest."(Doc. 76,  p. 8 & Doc. 76-3, ¶ 38).

According to the record, on August 20, 2010, Plaintiff underwent the excision his right eye pterygium as scheduled, which Dr. McGraw performed without complication. (*Id.* & & Doc. 76-3, ¶ 39).  Upon Plaintiff's request, Dr. McGraw examined Plaintiff's right eye prior to the excision and found no injuries other than the initial irritation from the chemical splash on July 25, 2010. (*Id.* & & Doc. 76-3, ¶ 40). Defendant Dr. Bohinski states that "Plaintiff absurdly believes that this surgery was performed as a 'cover up' to address his perceived condition of cataracts and/or injuries sustained by him as a result of the chemical splash." (Doc. 76, pp. 8-9).

Dr. Bohinski avers that after Plaintiff's excision, his right eye was still treated by medical staff at SCI-Dallas, and Plaintiff attended approximately eight (8) follow-up appointments with Dr. McGraw "at appropriately increasing intervals" through July of 2011. (Doc. 76, p. 9 & Doc. 76-3, ¶ 44). Defendant Dr. Bohinski further states that Plaintiff was excused from his work in the kitchen at SCI-Dallas through August 31, 2010. (*Id.*). Plaintiff testified that he did not attend work for about

one (1) month and that when he did, he was given special eyeglasses for protection. (*Id.* & Doc. 76-2, pp. 49-50).

According to the record, Plaintiff "presented to sick call for a post-operative follow-up as to his right eye" on August 30, 2010. (*Id.* & Doc. 76-3, ¶ 44). Dr. Bohinski avers that Plaintiff's eye seemed well despite his recent excision but that Plaintiff adamantly requested to continue to be excused from his work in the kitchen. (Doc. 76, pp. 9-10 & Doc. 76-3, ¶ 45). In that respect, Defendant Dr. Bohinski submits:

> Apparently, if Plaintiff could be kept off from work for a period of thirty (30) days, he would be reassigned from the "pot room" where he was currently working, and as desired ... Plaintiff's request for additional time off from work for a non-medical reason was found to be medically unjustified, however.

(Doc. 76, p. 10 & Doc. 76-3, ¶'s 46-47).

On July 14, 2011, Plaintiff's ophthalmologist, who was not employed by the prison, concluded that Plaintiff's right eye was "well-healed" and presented with "no recurrence" and, the doctor recommended a routine follow-up examination. (*Id.* & Doc. 76-3, ¶ 48). Defendant Dr. Bohinski asserts that as of August 16, 2011, a timely visual exam demonstrated that Plaintiff had "completely normal vision in both eyes and perfect bilateral visual acuities of 20/20." (*Id.*). Dr. Bohinski correctly point out that Plaintiff testified that "no healthcare provider has told Plaintiff that the vision in his right eye is currently in jeopardy." (*Id.* & Doc. 76-2, pp. 71-72).

Defendant Dr. Bohinski concludes that none of Plaintiff's claims against him are supported by facts, and, as such, Dr. Bohinski is entitled to summary judgment. (Doc. 76, p. 11).

**V. DISCUSSION.**

On May 3, 2012, Defendant Dr. Bohinski filed a Brief in Support of his Document 73 Motion for Summary Judgment. (Doc. 77). Therein, Defendant Dr. Bohinski argues that Plaintiff's deposition, taken on March 7, 2012, provided testimony that is "wholly contradictory to the allegations made in Plaintiff's Second Amended Complaint, in favor of Dr. Bohinski." (Doc. 77, p. 5). Dr. Bohinski further asserts that undisputed evidence has proven that Plaintiff did not even suffer from glaucoma or cataracts in his right eye, as he claimed he did, but, rather, Plaintiff suffers merely a pterygium in his right eye. (Doc. 77, p. 6). Defendant Dr. Bohinski also submits that Plaintiff has not provided any expert testimony to support his medical malpractice claims and that, in any event, he is precluded from doing so. (*Id.*).   In fact, as Defendant Dr. Bohinski notes (Doc. 76, p. 11, n. 9), Plaintiff testified that he did not speak to any medical professional regarding his claims against Defendant Dr. Bohinski, and that no health care provider, such as a doctor or nurse, told Plaintiff that his claims against Defendant Dr. Bohinski were valid.  (Doc. 76-2, p. 31).  Also, Plaintiff testified that he himself only believed he had cataracts and glaucoma in his right eye and, that  he did not know if he had a pterygium condition in his right eye.  (*Id.*, pp. 33-34).      Further, Defendant Dr. Bohinski attested to the fact that Plaintiff did not have cataracts and glaucoma in either of his eyes according to Plaintiff 's medical records.  (Doc. 76-3, p. 10, ¶ 51). Indeed, Defendant Dr. Bohinski avers that Plaintiff 's medical records indicated that he had right eye pterygium.  (Doc. 76-3, pp. 2-10).

Defendant Dr. Bohinski contends that he is entitled to summary judgment because: (1) Plaintiff is precluded from producing the necessary expert testimony to support his medical

malpractice claim against Dr. Bohinski; and, (2) even if the Court does not require expert testimony, there is no genuine issue of material fact that Plaintiff received appropriate and reasonable care and treatment with respect to the underlying events. (Doc. 77, p. 7).

As mentioned, the District Court dismissed Plaintiff's Eighth Amendment claims against Defendant Dr. Bohinski's but allowed Plaintiff's professional medical malpractice claims against Dr. Bohinski to proceed. (Doc. 59). Thus, Plaintiff's only has negligence claims under the law of Pennsylvania remaining against Defendant Dr. Bohinski. It does not appear that this Court has either diversity jurisdiction over Plaintiff's remaining medical professional liability claims against Defendant Dr. Bohinski, pursuant to 28 U.S.C. §1332, or federal question jurisdiction over Plaintiff's remaining claims against Defendant Dr. Bohinski since the Court dismissed Plaintiff's constitutional claims against this Defendant. However, since the Court allowed Plaintiff's constitutional claims against the Corrections Defendants to proceed, namely, Plaintiff's Eighth Amendment claims against Defendants Davis and Jones arising from his July 25, 2010 eye injury, Plaintiff's Eighth Amendment denial of proper medical care claims against Defendant Leskowski arising from his July 25, 2010 eye injury, and Plaintiff's Eighth Amendment state-created danger claim against Defendant Casey regarding his July 25, 2010 chemical splashing accident and eye injury, the Court can exercise supplemental jurisdiction over Plaintiff's remaining medical professional liability claims against Defendant Dr. Bohinski, pursuant to 28 U.S.C. §1367(a). Thus, we agree with Defendant Dr. Bohinski that the substantive law of Pennsylvania applies with respect to Plaintiff's medical professional liability claims against him. (Doc. 77, p. 10). Under Pennsylvania law, "[a] prima facie negligence claim requires the Plaintiff to show that: (1) the

Defendant had a duty to conform to a certain standard of conduct; (2) the Defendant breached that duty; (3) such breach caused the injury in question; and (4) the Plaintiff incurred actual loss or damages." *Farina v. Miggys Corp. Five & Six*, 2010 WL 3024757, *3 (M.D. Pa. 7-29-10)(quoting *Krentz v. Consol. Rail Corp.*, 589 Pa. 576, 910 A.2d 20, 27 (Pa. 2007)).

Initially, Defendant Dr. Bohinski argues that because professional negligence claims such as the ones currently at issue require expert testimony pursuant to Pennsylvania Rule of Civil Procedure 1042.3(a), Dr. Bohinski is entitled judgment as to Plaintiff's remaining claims against him because Plaintiff has presented no such testimony and Plaintiff is now precluded from presenting any such testimony. (Doc. 77, p. 9). Defendant Dr. Bohinski asserts that following:

> Pursuant to Pa.R.C.P. No. 1042.3(a), in an action such as this based upon allegations that a licensed professional deviated from an acceptable professional standard, the plaintiff must at the outset of the litigation file a supporting Certificate of Merit, therein confirming that an appropriate expert has found that there exists a reasonable probability of causal negligence or that expert support is unnecessary for prosecution of the claim. If confirmation is made in the latter regard the plaintiff is bound thereby and, "subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation." See Note to Pa.R.C.P. No. 1042.3(a)(3). As recognized by the Honorable Court, Pa.R.C.P. No. 1042.3(a) "applies to both *pro se* and represented plaintiffs and constitutes a rule of substantive state law with which plaintiffs in federal court must comply." Cashwell v. United States, 2009 U.S. Dist. LEXIS 81104 *13 (M.D. Pa. 2009) (citations omitted). A plaintiff's *pro se* status "is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of coming forth with expert medical testimony." Id. (citation omitted).

(Doc. 77, p. 9).

Defendant Dr. Bohinski correctly identifies four necessary elements of a *prima facie* cause of action for a medical professional liability claim under Pennsylvania law: (1) that a physician owed a duty to his or her patient; (2) that there was a breach of that duty; (3) that the breach proximately

caused, or substantially factored into, harm experienced by the patient; and (4) that the patient's damages directly resulted from the harm. (Doc. 77, p. 10, citing *Mitzfelt v. Kamrim*, 584 A.2d 888, 892 (Pa. 1990)). Defendant also correctly states that to prove a medical malpractice cause of action, Plaintiff is required to provide expert testimony that concludes "to a reasonable degree of certainty" that the physician's challenged conduct deviated from the appropriate medical standards and that this deviation proximately caused the suffered harm. (Doc. 77, p. 10, citing *Hoffman v. Brandywine Hosp.*, 661 A.2d 397, 399-400 (Pa. Super. Ct. 1995)). While expert testimony is not necessary when the physician's conduct so clearly lies within a layperson's comprehension, this kind of situation is rare, and we agree with Defendant Dr. Bohinski that this is not the case  in this matter. (Doc. 77, p. 10,  n. 6).

According to Dr. Bohinski, Pennsylvania federal courts have held that in a medical professional liability suit in the prison context, a fact-finder cannot reasonably find that a prison medical staff member acted negligently without expert opinion demonstrating the requisite deviation from the appropriate medical standards. (Doc. 77, pp. 11-12, citing *Neidig v. U.S.*, 2010 U.S. Dist. LEXIS 24875, at *18 (W.D. Pa. 2010); *Cashwell v. U.S.*, 2009 U.S. Dist. LEXIS 81104, at *18 (M.D. Pa. 2009)). Specially, Defendant Dr. Bohinski asserts that this Court, in an action involving alleged eye injury, found that the "plaintiff must offer 'expert medical testimony' regarding 'diagnosis' and 'causation of ... injuries of the eye ... [i]t is axiomatic that any one symptom could have numerous underlying causes.'" (Doc. 77, p. 12, citing *Niklaus v. Vivadent, Inc.*, 767 F. Supp. 94, 96 (M.D. Pa. 1991)).

Defendant Dr. Bohinski correctly maintains that because Plaintiff filed a COM confirming that expert testimony is not necessary to support his medical malpractice claims against Dr. Bohinski, Plaintiff is bound by that confirmation and precluded from presenting expert testimony at trial. (Doc. 77, p. 12, citing note to Pa. R.C.P. 1042.3(a)(3)).[10]   In fact, the District Court has previously found  that Plaintiff was bound by his COM which stated that a medical professional was unnecessary to prosecute his claims and that this precluded Plaintiff from introducing such evidence at trial.  (Doc. 59, 6, n.1).   Further, we agree with Defendant Dr. Bohinski, and again  find that Plaintiff's underlying issues are well beyond the province of laypersons to decide. We also agree with Defendant Dr. Bohinski that he should be awarded summary judgment, as Plaintiff is now precluded from presenting the expert testimony that is required for him to prevail on his remaining professional medical malpractice claims as against this Defendant. (Doc. 77, pp. 12-13).

Even if the Court finds that Plaintiff does not require expert testimony, Defendant Dr. Bohinski argues that he is still entitled to judgment because the undisputed evidence presented shows that there are no genuine issues of material fact with respect to Plaintiff's receipt of adequate medical care for his eye conditions. (Doc. 77, p. 13).

---

[10] The Note to Pennsylvania Rule of Civil Procedure 1042.3(a)(3) reads:

*Note:* In the event that the attorney certifies under subdivision (a)(3) that an expert is unnecessary for prosecution of the claim, in the absence of exceptional circumstances the attorney is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation.

Pa. R.C.P. 1042.3(a)(3).

Defendant Dr. Bohinski quotes the following as support from the Pennsylvania Supreme Court in the case of *Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145, 154 (Pa. 2009):

> Medical malpractice consists of a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act. Because medical malpractice is a form of negligence, to state a prima facie cause of action, a plaintiff must demonstrate the elements of negligence: a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm.

(Doc. 77, pp. 13-14, quoting *Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145, 154 (Pa. 2009)).

Defendant Dr. Bohinski points out that "[i]n other words, a 'physician must have the same knowledge and skill and use the same care normally [*i.e.*, typically or reasonably] used in the medical profession. A physician whose conduct falls below this standard of care is negligent.'" (Doc. 77, p. 14 , quoting *Pringle v. Rapaport*, 980 A.2d 159, 170 (Pa. Super. Ct. 2009)).

We concur with Defendant Dr. Bohinski that the undisputed record indicates that Plaintiff was treated properly with respect to his eye problems, both his right eye pterygium and the injury caused by the July 25, 2010 chemical spill incident.  (Doc. 77, p. 14 & Doc. 76-3). Dr. Bohinski points out that during the deposition of Plaintiff, Plaintiff effectively contradicted the allegations made in his second amended pleading. (Doc. 77, pp. 14-15). Dr. Bohinski further notes that at the conclusion of the underlying incidents, Plaintiff was left with "essentially perfect uncorrected vision," and, as such, "there is no genuine issue of material fact as to whether Dr. Bohinski could be found negligent under any interpretation of the evidence in this case." (Doc. 77, p. 15).  In fact, in his deposition, despite lacking any evidence that he actually suffered from cataracts and glaucoma, Plaintiff testified that after he was treated by the prison medical staff and outside doctors,

"they cleared his cataracts and his glaucoma." (Doc. 76-2, p. 33).

On July 10, 2012, as stated, Plaintiff filed an Answer to Defendant Dr. Bohinski's Statement of Facts in which he "[d]enies the entirety of all statements made in [Defendant Bohinski's] statement of facts." (Doc. 85). Plaintiff asserts that he is incapable of properly responding to Dr. Bohinski's Statement of Facts because it is not structured in the correct sequentially numbered format as required by the Local Rules, *i.e.*, 56.1, M.D. Pa. (*Id.*). Plaintiff concludes: "Therefore, the plaintiff denies number one which would be the numerical equivelant (sic) of the entire statement." (*Id.*).[11]   As discussed above, we agree with Defendant Dr. Bohinski that his Statement of Facts detailed the relevant material facts of this case and fully cite to the evidence to support them even though they were not stated in separate paragraphs as required by Local Rule 56.1.   Regardless, Plaintiff could have responded to Defendant Dr. Bohinski's Statement of Facts and Plaintiff could have submitted evidence to deny them.

In his Unsworn Declaration also filed on July 10, 2012, Plaintiff reiterates that he was refused the assignment of a different work detail when he requested one and that he was not given eye

---

[11] In his Reply Brief, Defendant Dr. Bohinski states:

> Plaintiff has answered Dr. Bohinski's lengthy and detailed Supporting Statement of Facts with a general denial on the stated basis that such was improperly not set forth in separately numbered paragraphs as required under local rule. (Doc. 85) While this is seen as an invalid excuse for not responding to unavoidable facts which warrant the entry of summary judgment, Dr. Bohinski is of course willing to re-file said Statement of Facts in separately numbered paragraph form, as necessary. Notably, however, Dr. Bohinski's Statement of facts is in fact logically broken into separately relevant paragraphs, simply without respective numbering.

(Doc. 86, pp. 1-2, n.1).

protection in the kitchen until after he was injured in a chemical splash. (Doc. 84, p. 1). Plaintiff further asserts that he was similarly not "sent to have the covering causing visual loss removed taken off [sic] of [his] eye" until after he was injured. (Doc. 84, p. 2, ¶ 8). According to Plaintiff, "the doctor who removed the covering obscuring [his] vision was NEVER informed that [he] had gotten chemicals in [his] eye." (*Id.* at ¶ 9). Plaintiff states that he was forced to cope with impaired vision while Defendant Dr. Bohinski and his medical staff were aware that Plaintiff was suffering vision problems and infections due to "the growth over [his] eye." (*Id.* at ¶ 10).

Plaintiff claims that his right eye pterygium excision was intentionally scheduled for a day when a lock-down would occur and that because the lock-down was merely "partial," inmates were permitted limited movement within their blocks, but Plaintiff was still not removed for treatment. (*Id.* at ¶¶ 11, 12). Additionally, Plaintiff asserts that per direction of Defendants Dr. Bohinski and Leskowski:

> A phone call was issued to the medical department while [Plaintiff] was awaiting examination by an optometrist at Wilkes Barre General hospital [sic] and the officers inforomed [sic] [him] that [he] was to be removed from the hospital before seeing the eye doctor so that [he] could be seen by the facility's eye doctor for financial reasons.

(*Id.* at ¶¶ 13, 14).

Also on July 10, 2012, Plaintiff filed a Brief in Opposition to Defendant Dr. Bohinski's Motion for Summary Judgment. (Doc. 83).

Initially, Plaintiff correctly states the elements of a *prima facie* cause of action for medical professional liability:

> "[A] plaintiff must establish (1) a duty owed by the physician to the patient, (2) a breach of duty from the physician to the patient, (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the

33

patient, and (4) damages suffered by the patient that were a direct result of that harm."

(Doc. 83, p. 3, quoting Doc. 77, p. 10).

Plaintiff asserts that Defendant Dr. Bohinski should have guaranteed that Plaintiff was not working in an area that would result in him suffering further harm from his visual condition. (Doc. 83, p. 4). Plaintiff states that as the Medical Director of SCI-Dallas, Defendant Dr. Bohinski "was directly responsible for the plaintiff's MEDICAL safety due to his existing condition as an agent of the state. (Doc. 83, p. 5). Plaintiff further avers that Defendant Dr. Bohinski clearly breached the duty that he owed to Plaintiff, which is "so obvious that it precludes the necessity of expert testimony." (*Id.*). Plaintiff argues that Dr. Bohinski should have either reassigned Plaintiff to a different job in the prison or provided him with proper safety gear after it became apparent that he was having visual issues as the result of chemical exposure. (*Id.*).

With respect to proximate cause, Plaintiff alleges that Defendant Dr. Bohinski's failure to provide eye protection until after Plaintiff's third chemical injury "shows a clear cut proximate cause that brought about the harm suffered by the plaintiff." (Doc. 83, pp. 5-6). Finally, Plaintiff states that it is similarly clear that Plaintiff's damages directly resulted from his chemical injuries that could have been easily prevented had he been provided the proper safety gear on time. (Doc. 83, p. 6).

Regarding his filed COM, Plaintiff argues that under Pennsylvania Rule of Civil Procedure 1042.3(a), a court cannot dismiss a plaintiff's claims merely because the plaintiff feels that they do not necessitate expert testimony. (*Id.*). Plaintiff states that his remaining claims against Defendant Dr. Bohinski are "common sense issue[s]" because the standards of the Occupational Safety and Health Administration clearly require that appropriate safety gear be provided to those handling

hazardous chemicals. (*Id.*). Plaintiff further asserts that SCI-Dallas has a similar regulation regarding safety gear, as mandated by the DOC. (*Id.*).

Plaintiff contends that whether he suffered pterygium is irrelevant to his claims against Defendant Dr. Bohinski. (*Id.*). Plaintiff avers that the relevant points are: (1) that the issuance of eye protection should have been standard procedure; and, (2) that the delay between the Dr. Bohinski's referral to an optometrist and the eventual excision was unreasonably disproportionate to what it should have been, which was inhumane. (Doc. 83, pp. 6-7).

Plaintiff concedes that Defendant Dr. Bohinski is correct in stating that a growth such as Plaintiff's is not generally recommended for removal "until it covers the eye to the point of obscuring vision." (Doc. 83, p. 7). Plaintiff argues, however, that Dr. Bohinski made the determination that Plaintiff's growth was ready for excision when he referred him to the ophthalmologist, a determination that was confirmed when the ophthalmologist examined Plaintiff's eye. (Doc. 83, pp. 7-8). Plaintiff claims that he was then forced to function and to work with hazardous chemicals for six (6) months without eye protection while he was essentially blind in his right eye. (Doc. 83, p. 8).

Plaintiff avers that medical expert testimony is not necessitated to realize that he should have been afforded eye protection and that Defendant Dr. Bohinski should have acted when Plaintiff informed him that DOC and OSHA safety standards were being violated. (*Id.*). Plaintiff further states that as a prisoner, rather than as an individual not incarcerated, he was owed a higher duty from his medical provider because he was "left to the whims of [Defendant Dr. Bohinski] as it regards his care." (Doc. 83, pp. 8-9).

On July 13, 2012, Defendant Dr. Bohinski filed a Reply Brief in which he claims that Plaintiff is currently trying to "'change his story' in a feeble and unsupported effort to avoid summary judgment in this case." (Doc. 86, p. 2).  Defendant Dr. Bohinski attached to his Reply Brief his Supplemental Unsworn Declaration and excerpts from Plaintiff's deposition.  (Doc. 86-1 & 86-2). Defendant Dr. Bohinski also attached a copy of the prison's Safety Manager's Initial Review Response to Plaintiff's August 1, 2010 Official Inmate Grievance regarding the chemical splash. (Doc. 86-3).

Dr. Bohinski asserts that prior to Plaintiff's pterygium excision on August 20, 2010, he found no medical reason to provide Plaintiff with eye safety wear while working in the kitchen and that he does not remember nor do the medical records reflect that Plaintiff requested such protective gear. (Doc. 86, p. 2 & 86-1, p. 1).  Defendant Dr. Bohinski further states that to his knowledge, appropriate safety gear, including goggles and/or safety glasses, were always available to inmates working in the kitchen, and inmates did not need medical (or any other) approval to use this protective wear. (Doc. 86, p. 3& 86-1, p. 2). Indeed, Dr. Bohinski  notes that Plaintiff himself admitted this under oath. (*Id.* citing Plaintiff's Dep., Doc. 86-2, p. 2).[12]

---

[12] Relevant portions of the provided excerpt of Plaintiff's deposition read:

**Q. Were there goggles or eyewear in the kitchen at the time?**

A. Well, they always had that there. The thing is, when a person is doing that with his hands, he knows that he's responsible for the fluid and for the goggles. And the fluid involves something that's serious. Because I don't know what the bucket — I don't know what the bucket contains. They are the ones who know.

**Q. So there were goggles available in the kitchen?**

As an exhibit to his Reply Brief, Defendant Dr. Bohinski attached a copy of the Initial Review Response to Plaintiff's Official Inmate Grievance regarding the chemical splash. The summary of the findings reads:

> I have been assigned as a Grievance Officer to address your grievance which is dated August 1, 2010. You state in your grievance that you were instructed to take chemical detergent and remove grease from the area where the food was prepared. You also state that you were not issued any protective gear and the bottle is Clearly [sic] marked that eye and hand protection is required. I interviewed FSI Casey and he stated that the goggles and gloves are available, however you never asked for them. You were trained by food service staff on the use of all chemicals and should have asked for the protective equipment.

---

A. At this time. When that happened with the chemical, they were not available.

**Q. Were there any goggles or eyewear in the kitchen at the time?**

A. Well, if there was, it was inside a room. It's not where you can see it outside.

**Q. Had you ever used goggles in the kitchen before that date?**

A. No. I was using goggles after that incident.

**Q. Why'd you use them afterwards?**

A. To protect — so I could protect my eye.

**Q. Did you ask anyone for the goggles on this particular occasion?**

A. On what occasion?

**Q. On the day that you were cleaning the grease?**

A. Well, the thing is — I did not ask because I did not know what the chemical was or what it contained. But the person who's in charge, he's responsible to say what it has in it and whether it causes harm or not.

(Doc. 86-2, p. 2).

You were provided the best medical treatment available for your injury as a precaution for any further injuries. I interviewed Mr. Leskowsky RNS, and he stated that you had Pterygium surgery to your right eye, which is not related to the chemicals you got in your eye. Upon being examined by the ophthalmologist you have no chemical burns or any other issues with your eyes.

Based on the above information your grievance is denied.

Your request for damages, pain and suffering is denied. Also your request for injunctive relief, nominal damages, declaratory relief, compensatory damages and any other damages which may be awardable by the court of law is also denied.

(Doc. 86-3).

We agree with Defendant Dr. Bohinski that he is entitled to summary judgment because Plaintiff may no longer present the required expert medical testimony to proceed on his claims against Dr. Bohinski, and we will recommend that Defendant Dr. Bohinski's Summary Judgment Motion (Doc. 73) be granted.

We note that Pennsylvania courts that have had occasion to address similar issues have held that filing a COM stating that expert medical testimony is unnecessary to prove a medical malpractice claim is binding and that, if medical testimony is in fact required, which it generally is, the claim may be dismissed. Recently, in a comparable case, a Commonwealth Court of Pennsylvania held:

"[G]enerally when the complexities of the human body are involved expert testimony is required to aid the jury in reaching conclusions as to the cause of pain or injury." The only time expert testimony will not be required for a medical malpractice claim is where the causal connection between the defendants' allegedly negligent act and the harm suffered by the plaintiff is "generally a matter of common knowledge," rendering the jury "capable through its every day experience and knowledge of comprehending the facts presented and drawing conclusions based on those facts." [*Wareham v. Jeffes*, 564 A.2d 1314, 1321 (Pa. Commw. Ct. 1989)]. Generally, such negligence rises to the level of gross incompetence.

> In this case, [the plaintiff's] certificates of merit stated that expert testimony of an appropriate licensed professional was unnecessary to prosecute his claims. He is wrong. [The plaintiff's] ailments, mastocytosis and esophageal dysphagia, are complex and little known diseases. An ordinary layperson would be incapable of deciding whether [the defendant-doctor] had acted negligently without hearing from experts about [the plaintiff's] conditions. Accordingly, [the plaintiff] needed to file a certificate of merit attesting to the fact that a licensed professional had supplied him with a written statement that there exists a reasonable probability that [the plaintiff] was the victim of medical malpractice. PA. R.C.P. No. 1042.3(a)(1). [The plaintiff] did not do so, and the certificates of merit he filed are binding. Because [the plaintiff] could not pursue a claim against [the defendant-doctor] for professional malpractice without expert testimony, his complaint failed to state a claim, even as to [the defendant-doctor].

*McCool v. Dept. of Corrections*, 984 A.2d 565, 571-72 (Pa. Commw. Ct. 2009) (internal footnotes omitted).[13]

Even more recently, the District Court, M.D. Pa., found that an inmate bringing a medical malpractice claim against his prison doctor for discontinuing his depression medication required expert medical testimony. *Illes v. Beaven*, Civil No. 1:12-CV-0395, 2012 WL 2836581, at *4 (M.D. Pa. July 10, 2012). However, because the inmate had filed a certificate of merit stating that he did not need expert testimony for his claim, he was precluded from presenting the necessary testimony, and the prison doctor was granted summary judgment in his favor. *Id.; see also Mertzig v. Booth*, 2012 WL 1431238, at *4 (E.D. Pa. Apr. 25, 2012)("Rule 1042.3(a)(3) and its accompanying Note

---

[13] The Pa. Commonwealth Court in *McCool* additionally noted that in *Smith v. Yohe*, 194 A.2d 167, 172-73 (Pa. 1963), in which the Pennsylvania Supreme Court found that expert medical testimony was not required to prove a *prima facie* negligence claim where a physician neglected to order diagnostic x-rays to determine whether an elderly patient suffered fractures after falling, which resulted in right-side paralysis, sever pain, and clear displacement. The Pennsylvania Supreme Court determined that the average jury member would realize "the diagnostic value of x-rays to determine whether the physician's failure to take x-rays 'evidenced a lack of judgment and care in arriving at a diagnosis.'" *McCool*, 984 A.2d at 571, n. 7.

are clear and unambiguous. Absent exceptional circumstances, a party is bound by its certification and may not introduce expert testimony on the standard of care and causation.")(citing *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011)).

Therefore, because Plaintiff Robles filed a Certificate of Merit (Doc. 34) indicating that expert medical testimony would not be necessary for him to proceed on his professional medical malpractice claims against Defendant Dr. Bohinski, he is hereby precluded from offering any such testimony. *See Mertzig v. Booth*, *supra*.  We must now determine whether this expert testimony is indispensable to Plaintiff's medical professional liability claims against Defendant Dr. Bohinski.

We agree with Defendant Dr. Bohinski that expert medical testimony is necessary for Plaintiff to proceed on his medical professional liability claims. Plaintiff's remaining claims against Dr. Bohinski stem from his allegations that Dr. Bohinski failed to properly treat and to timely provide an excision for Plaintiff's right eye pterygium and that Dr. Bohinski failed to treat Plaintiff properly after the July 25, 2010 chemical splash incident.  Initially, we do not find that the a layperson would be able to determine the appropriate time frame and treatment for excising a pterygium, and that  a layperson would be able to determine if Dr. Bohinski treated Plaintiff properly after the July 25, 2010 chemical splash incident . As such, an average jury member would need testimony from an expert medical witness to find whether Defendant Dr. Bohinski breached his professional duty to Plaintiff in delaying Plaintiff's non-emergent excision and in treating Plaintiff after the July 25, 2010 chemical splash incident. Plaintiff also alleges that Dr. Bohinski should have reassigned him to another job within SCI-Dallas after becoming aware of his vision problems. Further, we similarly do not find that a layperson could determine what constitutes appropriate

employment for an individual with a pterygium. Defendant Dr. Bohinski maintains that Plaintiff's pterygium and the chemical splash are unrelated incidents, as the chemicals would not have affected his pterygium. Defendant Dr. Bohinski also avers that before Plaintiff had his right eye pterygium excision on August 20, 2010, "there was absolutely no valid medical reason for me to supply Plaintiff with protective eye wear for use while working in the kitchen at SCI-Dallas." (Doc. 86-1, p. 1).  Without expert testimony, we do not believe that the average jury member would be able to make  conclusions on these issues.

Accordingly, we will recommend that Defendant Dr. Bohinski be granted summary judgment with respect to Plaintiff's remaining professional medical liability claims against him.

## VI. RECOMMENDATION.

Based on the above, it is respectfully recommended that Defendant Dr. Bohinski's **Doc. 73** Motion for Summary Judgment be granted with respect to Plaintiff's remaining medical professional liability claims against him. It is also recommend that judgment be entered in favor of Defendant Dr. Bohinski and against Plaintiff Robles.

 s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 29, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARLOS ROBLES, : CIVIL ACTION NO. **1:CV-10-2663**
:
Plaintiff : (Chief Judge Kane)
:
v. : (Magistrate Judge Blewitt)
:
J.J. CASEY, *et al.*, :
:
Defendants :

_____

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 29, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

42

Failure to file timely objections may constitute a waiver of any appellate rights.


 s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 29, 2012**